UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| GEORGE SINK, P.A. INJURY LAWYERS, ) | Civil Case No. 2:19-cv-01206-DCN |
| ) | |
| Plaintiff, ) | |
| ) | **DEFENDANTS' MEMORANDUM IN** |
| v. ) | **OPPOSITION TO PLAINTIFF'S** |
| ) | **MOTION FOR A PRELIMINARY** |
| GEORGE SINK II LAW FIRM, LLC, ) | **INJUNCTION** |
| GEORGE SINK LAW FIRM, LLC, ) | |
| SOUTHERN LEGAL ASSOCIATION, LLC, ) | |
| and GEORGE ("TED") SINK, JR., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN OPPOSITION**

**Preliminary Statement**

Attorney and Marine George Sink, Sr. ("Senior" or "George, Sr.") has declared war on his son.[1] "Always faithful" is the Marine's motto, but Senior has failed to be faithful to his own flesh and blood.[2] The first shot was fired on March 8, 2019, when he filed a Demand in Arbitration ("Demand") with the American Arbitration Association ("AAA") against his namesake and child.[3] Through the AAA Demand, the Plaintiff seeks the same relief which is now sought before this Court. In its latest motion, Plaintiff is attempting to open a second front against Defendants, but for the reasons stated below, this maneuver should be denied.

**Standard for Review**

There is a four-pronged test for determining if a preliminary injunction is warranted and it is set out in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008), *Winter*

---

[1] To be clear the Plaintiff is George Sink, P.A. Injury Lawyers, but this unit's Commanding Officer is George Sink, Sr.
[2] In Latin Semper Fidelis or commonly known as Semper Fi.
[3] Plaintiff has filed a motion to have the Plaintiff's Demand for Arbitration filed with the AAA on March 8, 2019 and Amended Demand in Arbitration filed with the AAA on May 3, 2019 filed under seal.

1

requires the movant (Plaintiff) to establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Courts considering whether to impose preliminary injunctions must separately consider each *Winter* factor. *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013). However, a preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit. *Pashby*, 709 F.3d at 319 (quoting *Sun Microsystems, Inc. v. Microsoft Corp.* (*In re Microsoft Corp. Antitrust Litig.*), 333 F.3d 517, 525 (4th Cir. 2003), *abrogated on other grounds by eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)). A preliminary injunction shall be granted only if the moving party clearly establishes entitlement to the relief sought. *Fed. Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 499 (4th Cir. 1981).

Furthermore, a party must demonstrate more than just a "possibility" of irreparable harm. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a 'clear showing' that the plaintiff is entitled to relief." *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). A plaintiff must overcome the presumption that a preliminary injunction will not issue when the harm suffered can be remedied by money damages at the time of judgment. *Hughes Network Sys., Inc. v. Interdigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994).

**Argument or The Rest of the Story**

In an apparent attempt to demonstrate that the equities dictate protection of the George Sink Injury Lawyers, P.A. marks, the Plaintiff took great liberties in its recitation of the facts to depict George Sink, Jr. as an interloper who popped into his father's law firm, and who after a short and unsuccessful stint as a lawyer, now seeks to parlay his name and not his talents into profit. The attached affidavit of George Sink, Jr. is a more complete and accurate accounting of the facts giving rise to this controversy. The following is an overview.

George Theodore Sink, Jr. ("George, Jr.") was born on February 10, 1979. He is the actually the third "George Sink" in the Sink family. As a child, George, Jr. used the nickname "Ted." George, Sr. was known by the nickname "GT." Childhood names and nicknames often fail to make the transition into professional life, although childhood friends and family are apt to hold on to an old moniker long after its useful life has expired.[4] After graduating from the Porter Gaud School in 1997, George, Jr. attended Yale University where he again excelled. George, Jr. is a 2001 graduate of Yale. Copies of George, Jr.'s Porter Gaud diploma and Yale University Degrees are attached as exhibits to his affidavit.

Rather than follow in his father's footsteps after college, George, Jr. pursued a marketing career in New York City. By 2005, George, Jr. had established a very successful marketing career in New York, assisted in launching many nationally known products such as the Droid Razr and enjoyed a handsome six-figure salary. In or around 2012, George, Sr. called his son in New York and asked him to leave his career, to come home to Charleston and to become a lawyer. George, Sr. was contemplating his future and his desire to retire from the practice of

---

[4] In full disclosure, the undersigned "Ronald L. Richter, Jr." is still known to certain members of his family and by childhood friends as "Bubba."

law. For Senior, bringing his namesake home to join and ultimately to lead his firm seemed like the perfect transition plan.

To entice George, Jr. to leave his career, George, Sr. offered to pay his son to attend law school and to obtain a law degree. Although it represented a decrease in salary, George, Jr. accepted the offer and excitedly returned home in reliance on the promises made by his father. In 2013, George, Jr. enrolled in the Charleston School of Law. He chose the Charleston School of Law in order to be close to his father and to the home office of the firm. As promised, George, Sr. paid his son while Junior attended law school. During his time at law school, Junior applied his outside time and talent in the marketing department of George Sink, P.A. Injury Lawyers. With Junior's help at marketing, the firm expanded rapidly in terms of new client intakes and gross revenues.

In May, 2016, George, Jr. graduated from law school and on November 7, 2016, he was admitted to the South Carolina Bar. Copies of George, Jr's law school degree and South Carolina Bar card are attached as exhibits to his affidavit. After being licensed to practice law, George, Jr. became an associate attorney with the firm and continued to assist in its marketing. It was George Sink, Sr. who then introduced the world to attorney, George Sink, Jr. A copy of the business card that the firm issued in George, Jr.'s name is attached as an exhibit to his affidavit, as are copies of screenshots of the George Sink, P.A. Injury Lawyers website as it appeared during George, Jr.'s employment as at attorney with the Plaintiff. All letterhead issued during George, Jr.'s employment with the firm would have also been provided by the Plaintiff and would have identified attorney George Sink, Jr. to the legal community and to the world as "George Sink, Jr." – not "Ted." Finally, attached to the Affidavit of George Sink, Jr. is a compilation of screenshots from many of the television ads that ran during George, Jr.'s

4

employment with the Plaintiff in which the Plaintiff introduced George, Jr. to the world as attorney "George Sink." In short, the Plaintiff induced George, Jr. to leave a successful career and to return to Charleston, South Carolina, and it was the Plaintiff who chose to introduce the world to attorney "George Sink, Jr." That is, the Plaintiff wanted George, Jr. to be identified as attorney George Sink, until it became inconvenient to have two George Sink attorneys in the world.

Upon information and belief, it started to become inconvenient to have two George Sink's in the world when the revenues of the Plaintiff law firm spiked to the point that national suitors came calling in the hopes of buying the Plaintiff firm - lock, stock and barrel. Upon information and belief, suitors found it inconvenient that there was another attorney in town named George Sink. It is at that point in time that George, Sr. presented his son with a Confidentiality and Non-Solicitation Agreement and with an ultimatum to sign it. George, Jr. did not understand the need for an Agreement so deep into his employment and otherwise found the terms unacceptable. Rather than have a mature and transparent discussion with his son about the purpose of the Agreement, George, Sr. renewed his demands that it be signed. Finally, after George, Jr. refused to sign the Agreement as it had been presented to him, George, Sr. directed Junior to change the agreement to something he could sign. George, Jr. then made several material changes to the agreement, signed it and presented it to the firm's head of human resources. Thereafter, George, Sr. signed the agreement, a copy of which is attached to the Affidavit of George Sink, Jr.. Apparently appreciating that the document he signed is fatal to the Plaintiff's claims, George, Sr. now takes the position that the NDA is the product of fraud and is unenforceable.[5]

---

[5] Still, the Plaintiff relied on the same NSA to have commenced its Demand in Arbitration.

On February 7, 2019, George, Jr. was summarily terminated from his employment at the Plaintiff firm. His termination has nothing to do with his performance or fitness as an attorney and the comments made about George, Jr. in the Plaintiff's submission are nothing short of defamatory in that regard. Thus, having been induced to leave a very successful career in a foreign state and in a different field altogether, having been introduced to the world as George Sink, Jr. by the Plaintiff and having been summarily terminated from his employment, the Plaintiff comes to this Court suggesting that it is equitable that George, Jr.'s ability to practice law be restricted in that he should not be able to practice under the birth name given to him by his father and under the attorney name, also given to him by his father.

**PRONG ONE: Success on the Merits**

To obtain a preliminary injunction, a plaintiff must demonstrate by "a clear showing" that it is likely to succeed at trial on the merits. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365, 376 (2008) (double underlining emphasis added).

This, the Plaintiff has not done.

In spite of its representations with its motions, Plaintiff has not demonstrated a sufficient showing to support a preliminary injunction, for at least the following reasons:

- What Plaintiff owns is less than it claims;
- Plaintiff does not own all that it claims;
- What Plaintiff claims to own, it cannot own;
- Plaintiff has already achieved been compensated fully on its claims;
- Plaintiff has not shown and cannot show a likelihood of success on the merits.

A.     **What Plaintiff Owns Is Less Than It Claims**

To assess Plaintiff's likelihood of success on the merits, it may be important to assess what intellectual property Plaintiff owns. From what Defendants can determine, Plaintiff appears to own U. S. Trademark Registration No. 3,849,776. That registration is not for a trademark GEORGE SINK. It is not for a trademark GEORGE SINK INJURY LAWYERS. It is not for a trademark GEORGE SINK UBIQUITOUS TV FACE. It is not for a trademark GEORGE SINK 9999999….

U. S. Trademark Registration No. 3,849,776 is very specific: it is for what is known as a design plus words, letters, and/or numbers. U. S. Trademark Registration No. 3,849,776 is for the following design:



Thus, from this registration, Plaintiff does not even own a federal registration for a word mark for GEORGE SINK, P.A. INJURY LAWYERS, apart from the stylized design as shown.

The Court will note that Plaintiff makes no contention, nor can it, that Defendants have used any of the following design trademarks:



or



or



      The point of these examples is that Plaintiff does not, and cannot, through U. S. Trademark Registration No. 3,849,776 claim propriety rights to anything more than a design plus words, letters, and/or numbers. That is what Plaintiff applied for, that is what is registered, and that is all that Plaintiff's '776 registration covers.

8

### B.     What Plaintiff Owns Is Less Than It Claims

In its Complaint, First Amended Complaint, and motion for preliminary injunction, Plaintiff also claims to own U. S. Trademark Registration No. 4,620,500.

U. S. Trademark Registration No. 4,620,500 resulted from a registration application filed by "George Sink P.A." **Exhibit 1**.

The certificate of registration for U. S. Trademark Registration No. 4,620,500 shows "George Sink P. A." as the owner. **Exhibit 2**.

There is not now, nor has there ever been, a legal entity named "George Sink P.A.," neither in the records of the South Carolina Secretary of State, nor in the records of any other State's Secretary of State that Defendants have been able to access. Defendants challenge Plaintiff to show otherwise. This problem is not trivial.

A trademark registration application must be filed by the party that owns the mark <u>on the application filing date</u>. (double underlining emphasis added). If the applicant does not own the mark on the application filing date, the application is void. 37 C.F.R. § 2.71(d); *Lyons v. Am. Coll. of Veterinary Sports Med. & Rehab.*, 859 F.3d 1023, 1027 (Fed. Cir. 2017); *Conolty v. Conolty O'Connor NYC LLC*, 111 USPQ2d 1302, 1309 (TTAB 2014); *see Huang v. Tzu Wei Chen Food Co.*, 849 F.2d 1458 (Fed. Cir. 1988); *Great Seats, Ltd. v. Great Seats, Inc.*, 84 USPQ2d 1235, 1239 (TTAB 2007). If the application was filed in the name of a party that had no basis for its assertion of ownership of or entitlement to use the mark as of the filing date, the application is void. *American Forests v. Sanders*, 54 USPQ2d 1860, 1861-63 (TTAB 1999), *aff'd*, 232 F.3d 907 (Fed. Cir. 2000); *In re Tong Yang Cement Corp.*, 19 USPQ2d 1689, 1691 (TTAB 1991).

Thus, it appears that the application that supposedly led to the issuance of U. S. Trademark Registration No. 4,620,500 was void, and therefore U. S. Trademark Registration No. 4,620,500 is void.

Plaintiff urges the Court that it is likely to succeed on the merits of U. S. Trademark Registration No. 4,620,500. The '500 Registration issued nearly five years ago, since October 14, 2014, and it issued in the name of "George Sink P.A.." **Exhibit 3**. But, curiously, on the same day (April 25, 2019) that Plaintiff filed the case at bar, Plaintiff also filed a nonsensical application with the U. S. Patent and Trademark Office "… to cure an inadvertent error in the manner in which the owner's name is set forth in the application. The correct and complete name of Registrant is George Sink, P.A. Injury Lawyers."

Plaintiff's attempt to hijack the '500 registration is ineffective. A trademark registration application must be filed by the party that owns the mark on the application filing date. If the applicant does not own the mark on the application filing date, the application is void. The application that led to the '500 registration is void, and the '500 registration is likewise void. 37 C.F.R. § 2.71(d) (…"An application filed in the name of an entity that did not own the mark as of the filing date of the application is void.") The Plaintiff is further not likely to succeed on the merits for the additional reasons and arguments set forth below.

C.      **What Plaintiff Cannot Own**

As described above in Section A, what Plaintiff appears to own is a narrow design mark. As described above in Section B, Plaintiff owns nothing in the failed registration filed by a nonexistent entity. What Plaintiff does not acknowledge in its briefing is that it cannot own Defendant George Sink, Jr.'s name.

10

It should be recognized that even the Plaintiff does not know precisely what it wants. Plaintiff cannot squarely articulate what it wants the Court's preliminary injunction to address. In its motion for preliminary injunction, it seeks the Court's prohibition against Defendant George Sink, Jr. "from using GEORGE SINK LAW FIRM or GEORGE SINK II LAW FIRM, <u>or any other similar GEORGE SINK-formative designation</u>." (Motion, p. 1) (double underlining emphasis added).

Would Plaintiff urge the following usages be included in the Court's injunction?

- GEORGE SINK

- GEORGE SINK COURTHOUSE DIRECTIONS

- GEORGE SINK NOT-NOT-NOT 999

What Plaintiff cannot claim is that Defendant George Sink, Jr. (whom Plaintiff takes silly pains to refer to as "Ted Sink" in its filings) has no right to use his own name. As provided by federal statute as a defense "or defect":

> "That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business…."

15 U.S.C. § 1115(b)(4).

Such is the use by Defendant George Sink, Jr. of his own name, the name that his father George Sink, Sr. presumably at least acceded to with his mother, at his birth decades ago. Defendant George Sink, Jr. uses his own name as a business name to identify his business, not a product or service. Pursuant to 15 U.S.C. § 1115(b)(4), Plaintiff cannot stop that.

And Plaintiff's principal, George Sink, Sr., realizes and admitted the foregoing. George Sink, Sr. tacitly admitted that he has no monopoly over the moniker GEORGE SINK by his filing

11

on November 12, 2018 at the USPTO to register the mark GEORGE SINK for "legal services." **Exhibit 4**. If U. S. Trademark Registration No. 3,849,776, or if U. S. Trademark Registration No. 4,620,500, or if George Sink, Sr.'s common law rights, or if any other legal rights owned by George Sink, Sr. afforded the protection which the Plaintiff suggests, there would have been no legal reason for George Sink, Sr. to have filed such a registration application.[6]

**D.     Plaintiff Has Already Achieved All That It Can**

As described in Defendants' Motion to Dismiss (Docket # 11), incorporated by this reference herein, Plaintiff cannot "succeed on the merits" because it has already achieved all that it can in this action. Paragraph 30 of the Complaint refers to a "Non-Solicitation Agreement" between the Plaintiff and George Sink, Jr. Paragraphs 51 and 52 of the Complaint cite the Arbitration Clause of the Non-Solicitation Agreement as the sole purported authority for the Plaintiff having initiated this action. The Non-Solicitation Agreement includes a liquidated damages provision:

> "Employer may only recover up to $500.00, including all costs and fees for all claims, as a total sum, against Employee, agreeing that this represents full and final payment <u>for all claims</u> against employee now and in the future."
>
>> Non-Solicitation Agreement, Arbitration Clause, p. 3 (double underlining emphasis added).

The Non-Solicitation Agreement is clear that the payment of $500.00 by George Sink, Jr. represents "full and final payment for all claims against employee now and in the future."  George

---

[6] Once Plaintiff and/or George Sink, Sr. realized the implications of the admission of this filing, on May 14, 2019 this application was abandoned.
*See generally* http://tsdr.uspto.gov/#caseNumber=88190558&caseType=SERIAL_NO&searchType=statusSearch regarding U. S. trademark registration application serial number 88190558.

Sink, Jr. has already tendered $500.00 through his legal counsel months ago, on March 8, 2019. Therefore, Plaintiff has already achieved all that it can against Defendants, and accordingly has no further hope for success on the merits of this action.

It is foreseeable that the Plaintiff will contend that the Non-Solicitation Agreement is not enforceable as it is the product of fraud. Setting aside the fact that the Plaintiff has relied on the Non-Solicitation Agreement and its arbitration provision to commence a Demand in Arbitration, there is no likelihood that the Plaintiff will succeed in setting the Non-Solicitation Agreement aside through fraud. This is true for many reasons, the most significant of which is that it is ludicrous for George Sink, Sr. to take the position that he was became the victim of fraud when he signed an agreement that he did not first read. While the Defendants reject wholesale any suggestion or allegation of fraud, even assuming facts in favor of the Plaintiff, the law is simply not on its side.

*Regions Bank v. Schmauch*, 354 S.C. 648, 582 S.E. 2d 432 (2003) speaks directly to our circumstance. In *Regions Bank*, the Court refused to permit reformation of a contract between a bank and its customer when the customer never read the contract:

> Even if her contention is assumed to be one of unilateral mistake, it is unavailing absent proof of fraud, deceit, misrepresentation, concealment, or imposition of the party opposed to rescission. *See Truck South, Inc. v. Patel,* 339 S.C. 40, 49, 528 S.E.2d 424, 429 (2000) ("Unilateral mistake is not by itself grounds for rescinding the contract unless the mistake has been induced by fraud, deceit, misrepresentation, concealment, or imposition of the party opposed to rescission, without negligence on the part of the party claiming rescission,**\*663** or where mistake is accompanied by very strong and extraordinary circumstances which would make it a great wrong to enforce the agreement.");*Alderman v. Bivin,* 233 S.C. 545, 552, 106 S.E.2d 385, 389 (1958) ("A contract may be reformed or rescinded ... where the mistake is not mutual, unilateral, and has been induced by the fraud, deceit, misrepresentation, concealment, or imposition in any form of the party opposed in interest to the reformation or rescission, without negligence on the part of the party claiming the right...."). Here, she fails to present evidence of her lack of understanding as the basis for the unilateral mistake. Additionally, Appellant averred that she did not read the documents placed in front of her…

There was no active fraud here either. The worst that George, Sr. can ever say honestly about the Non-Solicitation Agreement is that he did not read it, although he would have appreciated specifically that George, Jr. had made material changes to the agreement. See Affidavit of George Sink, Jr.

The law does not afford protection from a contract for those who simply fail to take the time to read the contract before they sign it. A person who signs a contract or other written document cannot avoid the effect of the document by claiming he did not read it.*Sims v. Tyler,* 276 S.C. 640, 643, 281 S.E.2d 229, 230 (1981);*Evans v. State Farm Mut. Auto. Ins. Co.,* 269 S.C. 584, 587, 239 S.E.2d 76, 77 (1977). A person signing a document is responsible for reading the document and making sure of its contents. Every contracting party owes a duty to the other party to the contract and to the public to learn the contents of a document before he signs it. *Burwell v. South Carolina Nat'l Bank,* 288 S.C. 34, 39, 340 S.E.2d 786, 789 (1986);*Sanders v. Allis Chalmers Mfg. Co.,* 237 S.C. 133, 139–40, 115 S.E.2d 793, 796 (1960);*Stanley Smith & Sons v. D.M.R. Inc.,* 307 S.C. 413, 417, 415 S.E.2d 428, 430 (Ct.App.1992). One who signs a written instrument has the duty to exercise reasonable care to protect himself. *Maw v. McAlister,* 252 S.C. 280, 285, 166 S.E.2d 203, 205 (1969);*Evans,* 269 S.C. at 587, 239 S.E.2d at 77;*DeHart v. Dodge City of Spartanburg,* 311 S.C. 135, 139, 427 S.E.2d 720, 722 (Ct.App.1993). " The law does not impose a duty on the bank to explain to an individual what he could learn from simply reading the document." *Citizens & S. Nat'l Bank of South Carolina v. Lanford,* 313 S.C. 540, 545, 443 S.E.2d 549, 551 (1994).

This rule is subject to the exception that if the party is ignorant and unwary, his failure to read the document may be excused. *Burwell,* 288 S.C. at 40, 340 S.E.2d at 789;*Thomas v. Am. Workmen,* 197 S.C. 178, 182, 14 S.E.2d 886, 887 (1941);*Austin v. Indep. Life & Accident Ins. Co.,*

296 S.C. 156, 160, 370 S.E.2d 918, 921 (Ct.App.1988). However, our court very strictly construes this exception. *Burwell,* 288 S.C. at 40, 340 S.E.2d at 789. In determining whether a party can be classified as ignorant and unwary, an individual's education, business experience and intelligence are all considered. *Burwell,* 288 S.C. at 40, 340 S.E.2d at 789–90; *Thomas,* 197 S.C. at 182, 14 S.E.2d at 888;*Austin,* 296 S.C. at 160, 370 S.E.2d at 921.  With all due respect for George, Sr., we do not believe that a lawyer of more than 40 years tenure should be or can be considered ignorant and unwary in the execution of a contract.  There is no likelihood that the Plaintiff will succeed in setting aside or reforming the Non-Solicitation Agreement.

E.     **Defendants' Defenses Challenge Plaintiff's Likelihood of Success**

Defendants have yet to answer the Complaint, in view of their motion to dismiss.  However, the facts of the case support strong and fatal defenses.  Plaintiff acquiesced in and consented to Defendant George Sink's use of his name for the practice of law – it was George Sink, Sr. himself who introduced Defendant George Sink, Jr. to the public for legal services, by way of multiple television advertisements in which George Sink, Sr. introduced Defendant George Sink, Jr. as "George Sink, Jr."  See Affidavit of George Sink, Jr. [George, Jr.'s affidavit] A screengrab of such a television advertisement is illustrated below:



Plaintiff also provided Defendant George Sink with business cards, which read "George T. Sink Jr Attorney at Law," as illustrated below:



Second, Defendants have not used any trademark asserted by the Plaintiff. Plaintiff's asserted marks are both for GEORGE SINK, P.A. INJURY LAWYERS. There is not even an assertion that any Defendant has used the Plaintiff's mark. Pursuant to the "anti-dissection" rule, marks should not be broken into separate components for comparison. *See 4 McCarthy on Trademarks and Unfair Competition* § 23:41 (4th ed.) ("marks are to be compared by looking at them as a whole, rather than breaking the marks up into their component parts for comparison").

Additionally, the Plaintiff is actually attempting to use the Non-Solicitation Agreement which George, Jr. entered into significantly following his employment as a covenant not to

compete and/or a restriction on George, Jr.'s right to practice law, all of which violates Rule 5.6 of the South Carolina Rules of Professional Conduct: "A lawyer shall not participate in offering or making (a) a partnership, shareholders, operating, employment or other similar type of agreement that restricts the right of a lawyer to practice after termination of the relationship, expect an agreement concerning benefits upon retirement."

In S.C. Bar Ethics Advisory Opinion 1992-92-22, a South Carolina law firm which advertised on television inquired whether it could require its associates to sign an agreement that provided "in the event the Employee elects to have his/her name included in the Firm's advertising … for a period of three (3) years after the Cancellation Date … Employee shall not advertise Employee's services as an attorney in any television advertisement shown or broadcaset in the Area as defined hereinabove." Paragraph 5 of the same agreement contained a stipulation that the agreement was "not a restriction on the right to practice law." The South Carolina Bar Ethics Advisory Committee disagreed finding that "the restriction on advertising for clients is, however, an indirect restriction on the right to practice." The Committee found the agreement fell "within the prohibition of restrictions on the right to practice law under Rule 5.6(a)." Here, the Plaintiff seeks to enforce the Non-Solicitation Agreement in a manner that violates the South Carolina Rules of Professional Conduct.

For at least the foregoing reasons, Plaintiff has failed to provide a clear showing that it is likely to succeed at trial on the merits.

**PRONG TWO: Irreparable Harm**

Damages which are capable of mathematic computation do not constitute irreparable harm. The Plaintiff seeks monetary damages in its Complaint. To have done so is to have stipulated that

the damages of which the Plaintiff complains are capable of computation. The Plaintiff cannot point to any legitimate irreparable harm and simply calling it so doesn't make it so.

**PRONG THREE: Equities**

Injunctive relief is equitable relief. It is axiomatic that one who comes into equity must have done equity and must come with clean hands. The Plaintiff's primary contention is that it owns a protected mark and if George Sink, Jr. is allowed to practice law as George Sink, Jr. the mark will be infringed upon and the Plaintiff will suffer irreparably. First, it is George Sink, Sr. who gave George Sink, Jr. his birth name – all cheeky attempts to now call him "Ted" notwithstanding. It was also George Sink, Sr. who induced his son to leave a successful career in marketing and to return home to South Carolina. George Sink, Sr. did not simply want his son to return home, he wanted him to become a lawyer like his father. George Sink, Sr. did not simply want his son to become a lawyer like himself, he wanted him to become attorney "George Sink, Jr." To that end, Senior introduced Junior to the legal community and to the world and "George Sink, Jr." – not "Ted." Junior was given business cards and he was featured on the firm's website, all in the name "George Sink, Jr."

Having plucked his son out of a successful career and having made him attorney "George Sink, Jr.," George Sink, Sr. then did the unthinkable – he summarily fired his son from the firm despite promises that he was one day to accede to the helm. Having been extricated from a successful career path and having become a suddenly unemployed lawyer, what was George Sink, Jr. to do? Logically, he decided to practice law. Now, the Plaintiff appears before this Court and urges the Court that the equities dictate that attorney George Sink, Jr. should forever forward be known as "Ted."

If there is market confusion, which the Defendant rejects, the confusion was manufactured by the Plaintiff.  If the Plaintiff is suffering harm, which the Defendant rejects, it is harm occasioned by the Plaintiff's own conduct.  If the Plaintiff believes that equity should intervene and protect the Plaintiff from its own ignorance and impudence, then the Plaintiff would appear to have a fundamental misunderstanding of equity itself.  Equity was almost certainly born on a playground somewhere.  Even children on a playground are familiar with the legal maxim "no take backs."  Equity favors the Defendants.

**PRONG FOUR: Public Interest**

The public interest is actually best served here by a strict adherence to the South Carolina Rules of Professional Conduct which would not restrict George Sink, Jr.'s right to advertise and/or his right to practice law.  The policy underpinning Rule 5.6 is also revealed through Ethic's Advisory Opinion 1992-92-22: "A restriction on advertising comes closer to impinging on a client's knowledgeable and free choice of lawyers …"  The consuming public is better served if both the Plaintiff and the Defendant have the ability to advertise their respective services without restriction.  Besides, there is little likelihood that Junior will be confused with his 76 year old father.  This is particularly true when Junior has consistently held himself out as Junior.  Furthermore, it is not uncommon in South Carolina that law firms operate with very similar names.  A brief survey of South Carolina law firms has revealed the list of similarly named law firms attached as an exhibit to the Affidavit of George Sink, Jr.  Public interest favors the Defendants.

### Conclusion

For the reasons stated herein the Plaintiff's motion for a preliminary injunction should be denied.

*{SIGNATURE PAGE TO FOLLOW}*

19

| | |
|---|---|
| Charleston, South Carolina<br>May 29, 2019 | s/Ronald L. Richter, Jr.<br>Ronald L. Richter, Jr. (Federal Bar No. 6264)<br>s/Scott M. Mongillo<br>Scott M. Mongillo (Federal Bar No. 7436)<br>BLAND RICHTER, LLP<br>*Attorneys for Defendants*<br>Peoples Building<br>18 Broad Street, Mezzanine<br>Charleston, South Carolina 29401<br>Telephone 843.573.9900<br>Facsimile 843.573.0200<br>ronnie@blandrichter.com<br>scott@blandrichter.com<br><br>s/Eric S. Bland<br>Eric S. Bland (Federal Bar No. 5472)<br>BLAND RICHTER, LLP<br>*Attorneys for Defendants*<br>1500 Calhoun Street<br>Post Office Box 72<br>Columbia, South Carolina 29202<br>Telephone 803.256.9664<br>Facsimile 803.256.3056<br>ericbland@blandrichter.com<br><br>-and-<br><br>s/Timothy D. St. Clair<br>Timothy D. St. Clair (Federal Bar No. 4270)<br>PARKER POE ADAMS & BERNSTEIN, LLP<br>*Attorneys for Defendants*<br>110 East Court Street, Suite 200<br>Greenville, South Carolina 29601<br>Telephone:  864.577.6371<br>Facsimile:  864.242.9888<br>timstclair@parkerpoe.com |