**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **George Sink, P.A. Injury Lawyers,** | ) | |
| | ) | No.:  2:19-cv-01206-DCN |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **Memorandum of Law in Support of Motion** |
| **George Sink, Jr.** *et al.* | ) | **to Stay Pending Appeal** |
| | ) | |
| Defendants. | ) | |

## Table of Contents

Background ................................................................................................................. 2

Legal Standard ........................................................................................................... 4

Argument .................................................................................................................... 4

   I.  Sink Jr., *et al.* are likely to succeed on the merits of their appeal ....................... 5

     A.  This Court's preliminary injunction did not set a bond ................................... 5

     B.  Sink P.A's promotion of the two George Sink attorneys side-by-side estops it from claiming infringement ................................................................ 6

     C.  Sink P.A. has obtained all relief it was entitled to receive and any arbitration proceedings are barred by *res judicata*. ........................................ 8

     D.  Sink P.A.'s claimed irreparable harm is based on a legal presumption that is no longer good law ................................................................................ 12

     E.  Sink P.A. trademark registration number 4,620,500 must be cancelled for fraud. ......................................................................................................... 14

     F.  Sink P.A.'s trademarks lack secondary meaning. ....................................... 16

     G.  This Court's injunction was a mandatory injunction that requires extra scrutiny. ...................................................................................................... 17

  II.  Sink Jr., *et al.* have been, and will continue to be, irreparably harmed ............. 17

  III.  This Court's August 9, 2019, order works a greater hardship on Sink Jr. *et al.* than Sink P.A. ............................................................................................. 20

  IV.  The public interest supports Sink Jr.'s use of his name professionally ............. 20

  V.  A stay is appropriate under the South Carolina Uniform Arbitration Act ......... 22

Conclusion ................................................................................................................. 22

## Background

This is a dispute between a father and his namesake over who may use their shared name professionally as attorneys. The father, George Sink, Sr. ("Sink Sr."), is the president of Plaintiff George Sink, P.A. Injury Lawyers ("Sink P.A."). Defendant George Sink, Jr. ("Sink Jr.") was an employee of Sink P.A. for approximately six years. Sink Sr. enticed Sink Jr. to give up his successful advertising career in New York City and return to South Carolina to join, and eventually take over, Sink P.A. (ECF Entry 21 ¶¶ 39-59). Sink Jr. worked first in firm marketing, and during his tenure Sink P.A. realized substantial growth in revenue. (ECF Entry 21 ¶¶ 76-95). After attending law school and passing the South Carolina bar in 2016, he worked as an attorney, appearing side-by-side with his father in television and internet advertisements at the firm's request. (ECF Entry 21 ¶¶ 9-12, 23, 26-38, 50-60, 116; ECF Entry 21-9; ECF Entry 21-10). Eventually, Sink Sr. reneged on his promise to hand Sink P.A. to his son and he began exploring the potential sale of the firm. (ECF Entry 21 ¶¶ 13-14).

On or around February 4, 2019, Sink Sr. requested that Sink Jr. assign the rights to use "George Sink," "George Sink, Jr" and the image and publicity rights of George Sink Jr to Sink P.A., in preparation for a potential sale of the firm. (ECF Entry 21 ¶¶ 14-20). When Sink Jr. refused, Sink Sr. fired him on or about February 7, 2019. (ECF Entry 21 ¶¶ 17-20). Sink Jr. subsequently established his own legal business, represented by Defendants George Sink II Law Firm, LLC; George Sink Law Firm, LLC; and Southern Legal Association, LLC, all of which were organized in February of 2019. (ECF Entry 14-16; ECF Entry 14-17; ECF Entry 14-18). At this time, Sink Jr. was subject to a Confidentiality and Non-Solicitation Agreement ("Agreement") he and Sink P.A. executed on April 30, 2018 (ECF Entry 11-1); on March 8, 2019, Sink Jr. tendered

Sink P.A. the $500.00 in damages that it was entitled to under the Agreement as full and final satisfaction of all claims that could be brought by Sink P.A. (ECF Entry 11-2).

On April 25, 2019, Sink P.A. filed a complaint (ECF Entry 1) against Defendants George Sink, Jr.; George Sink II Law Firm, LLC; George Sink Law Firm, LLC; and Southern Legal Association, LLC alleging: (a) trademark infringement under the Lanham Act (15 U.S.C. § 1114), (b) unfair competition under the Lanham Act (15 U.S.C. § 1125(a)), (c) cybersquatting under the Lanham Act (15 U.S.C. § 1125(d)), (d) common law trademark infringement, (e) violation of the South Carolina Unfair Trade Practices Act (S.C. Code § 39-5-20 *et seq.*), and (f) trademark dilution (S.C. Code § 39-15-1165). Sink P.A. requested money damages and injunctive relief in its complaint.

Sink P.A. subsequently filed, pursuant to the Agreement, a demand for arbitration before the American Arbitration Association, which Sink P.A. amended on May 3, 2019.[1] Sink Jr. *et al.* moved to dismiss the district court complaint on May 10, 2019 (ECF Entry 11), for, *inter alia*, requesting relief that was prohibited under the Agreement. Sink P.A. filed a motion for a preliminary injunction on May 15, 2019 (ECF Entry 14), requesting that the District Court enjoin Sink Jr., *et al.* from using GEORGE SINK professionally. On May 21, 2019, Sink P.A. amended its complaint to request only injunctive relief (ECF Entry 17) and filed a motion to file under seal its May 3, 2019 amended demand for arbitration (ECF Entry 16). Sink Jr. *et al.* renewed their motion to dismiss on June 7, 2019 (ECF Entry 26).

This Court heard arguments on Sink Jr. *et al.*'s motion to dismiss, Sink P.A.'s motion for preliminary injunction, and Sink P.A.'s motion to seal on July 29, 2019. (ECF Entry 40). On

---

[1] Though this demand was against all of the Defendants in this action, only Sink Jr. was a signatory to the Agreement. (ECF Entry 11-1 p. 5).

August 9, 2019, this Court granted the motion to seal, denied the motion to dismiss, and granted the motion for a preliminary injunction (ECF Entry 41). Sink Jr. *et al.* filed their notice of appeal on August 30, 2019. (ECF Entry 42).

## Legal Standard

The purpose of granting a stay pending appeal is to preserve the status quo, preserving the controversy for review by the Court of Appeals. 12 James Wm. Moore, *Moore's Federal Practice* § 62.06[1] (3rd ed. 2016). When considering whether to stay an order pending appeal, courts consider "(1) whether the applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also* Fed. R. Civ. P. 62. This is the same standard that governs a preliminary injunction. *E.g. In re Forest Grove, LLC*, 448 B.R. 729, 743 (Bankr. D.S.C. 2011).

## Argument

Sink Sr. induced his namesake to return to South Carolina to practice law with him at Sink P.A., which spent millions on marketing the two George Sinks together. When Sink Jr. refused to assign Sink P.A. his right to use his name professionally, he was fired. Though Sink P.A. had the ability to resolve this family matter privately via arbitration, it chose to take by the courts what it could not obtain otherwise. The public donnybrook Sink P.A. has instigated has subjected Sink Jr. to irreparable damage to his professional reputation and general ridicule; this Court must stay this action, particularly its August 9, 2019, order and the related arbitration proceeding, to protect Sink Jr. *et al.* from further harm while the Fourth Circuit Court of Appeals considers their arguments.

I.      **Sink Jr.,** *et al.* **are likely to succeed on the merits of their appeal.**

In order to succeed in their appeal, Sink Jr. *et al.* must show that Sink P.A. did not make a "clear showing" of the elements of a preliminary injunction to this Court. It was Sink P.A.'s burden to demonstrate (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm, (3) the balance of hardships tips in its favor, and (4) the injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Each preliminary injunction factor must be "satisfied as articulated." *The Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds*, *Citizens United v. FEC*, 558 U.S. 310 (2010), *aff'd*, *The Real Truth About Obama, Inc. v. FEC*, 607 F.3d 355 (4th Cir. 2010) (per curiam). Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by a "clear showing" that, among other things, it is likely to succeed on the merits at trial. *Winter*, 555 U.S. at 376; *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam). Sink P.A. fails in presenting a "clear showing" of the likelihood of success on the merits, as Sink Jr. *et al.* will likely prevail in their defenses and counterclaims:

A.      **This Court's preliminary injunction did not set a bond.**

This Court's August 9, 2019, order does not address the issue of security for Sink P.A.'s injunction. The federal rules mandate a bond when a preliminary injunction is issued:

> (c) Security. The court may issue a preliminary injunction or a temporary restraining order **only** if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

Fed. R. Civ. P. 65(c) (emphasis added).[2] "A district court **must** fix a bond whenever it grants a preliminary injunction or restraining order…This rule is mandatory and unambiguous." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999). "In view of the clear language of Rule 65(c), **failure to require a bond upon issuing injunctive relief is reversible error.**" *Id.* (emphasis added). Accordingly, this Court's August 9, 2019, order will be reversed on appeal.

### B.    Sink P.A.'s promotion of the two George Sink attorneys side-by-side estops it from claiming infringement.

"An infringement action may be barred by the doctrine of estoppel by acquiescence where the owner of the trademark, by conveying to the defendant through affirmative word or deed, expressly or impliedly consents to the infringement." *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 462 (4th Cir. 1996) (citing 4 Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 31.14[2] (3rd ed. 1995)); *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1046 (4th Cir.1984)).

Sink Jr.'s addition to Sink P.A. in 2013 brought with it the question of how Sink Jr. should be addressed. Sink Sr. demanded that Sink Jr. be referred to as "George Sink" agreed that the latter would be known professionally as "George Sink, Jr." (ECF Entry 21 ¶¶ 23, 26-34; ECF Entry 21-6). Once Sink Jr. became an attorney, Sink P.A. spent millions of dollars on television advertisements, and other media, to introduce the public to the idea of two George Sinks practicing law. (ECF Entry 21 ¶¶ 23-38, 50-59). The record of this case is replete with advertisements, marketing plans, and public statements containing two attorneys named George Sink, all of which were produced by or for Sink P.A. (*e.g.* ECF Entry 21 ¶¶ 23-38, 50-59; ECF Entry 21-9; ECF

---

[2] It is worth noting that this Court has the discretion to waive bond or other security for a stay of an injunction pending appeal. Fed. R. Civ. P. 62(d).

Entry 21-11; ECF Entry 21-22). Of particular relevance is Sink P.A.'s "Two George Sinks" advertising plan, which went to great lengths (and expense) to alleviate the public's potential confusion over two attorneys practicing law as "George Sink". (ECF Entry 21-9 pp. 13-14; ECF Entry 21-11). Sink P.A.'s advertising was bearing fruit and the public recognized the distinction between Sink Sr. and Sink Jr. (ECF Entry 21-29 p. 10). Sink P.A. acknowledged Sink Jr.'s rights to use GEORGE SINK professionally when Sink Sr. demanded that Sink Jr. assign these rights to Sink P.A. to facilitate a sale of the firm. (ECF Entry 21 ¶¶ 16-18). Sink P.A. also acknowledged Sink Jr.'s rights when it required him in May of 2018 to execute at least one release of name and likeness and transferred certain phone numbers to him. (Sink Jr. Decl. ¶ 2, Ex B & C).

Sink Sr. also acknowledged Sink Jr.'s rights when expressly abandoned an application to register GEORGE SINK. On November 12, 2018, Sink Sr. filed application 88190558 with the USPTO, seeking to register a trademark in GEORGE SINK. (ECF Entry 20-4; ECF Entry 21-27 p. 3). Sink Jr. subsequently filed a letter of protest with the USPTO, stating that Sink Sr. did not have consent to use his name. (ECF Entry 21 ¶¶ 61-64). Sink Sr. abandoned application 88190558 on May 14, 2019. (ECF Entry 21-27 p. 3).

A decision of the Eastern District of New York is instructive on the matter of acquiescence. *See Ladas v. Potpourri Press, Inc.*, 846 F. Supp. 221 (E.D.N.Y. 1994). In *Ladas*, a freelance artist provided artwork for a gift store ("Potpourri") for approximately three years. During this time, Potpourri began marketing collections of the artist's work under her name (the "'Christina' collection") with the artist's express permission. When the artist and Potpourri could not agree on terms for the artist to prepare new artwork, the artist ended her relationship with Potpourri, registered her name as a trademark, and brought suit against Potpourri to stop it from selling her

prior collections. In finding that the artist had acquiesced to the use of her name, the Eastern

District of New York held:

> In short plaintiff encouraged the use of her name and the appearance of her
> signature in items in Potpourri's line. Five months after she stopped making art for
> Potpourri she registered her name as a trademark. Now she seeks an injunction to
> prevent Potpourri from continuing to do what she once countenanced. The court
> need not perpetrate such an injustice.

*Ladas*, 846 F.Supp. at 226. Similarly, Sink P.A. has sought an injunction to prevent Sink Jr. from

continuing to do what it once countenanced and encouraged. Just as in *Ladas*, this Court need not

perpetuate this injustice; it must stay this action in order to allow the Fourth Circuit to reverse.

### C.    Sink P.A. has obtained all relief it was entitled to receive and any arbitration proceedings are barred by *res judicata*.

Sink P.A.'s action is based on the Confidentiality and Non-Solicitation Agreement it and

Sink Jr. executed on April 30, 2018 (the "Agreement"). (ECF Entry 11-1). Sink Jr. *et al.* maintain

that Sink P.A.'s recovery under the Agreement is limited to $500.00 in money damages, based on

the following provision:

> [Sink P.A.] may **only** recover up to $500.00, including all costs and fees for all
> claims, as a total sum, against [Sink Jr.], agreeing that this represents full and final
> payment for all claims against [Sink Jr.] now and in the future. Arbitrator may make
> this the maximum penalty against Employee. The Employee may **only** seek relief
> on an individual basis.

(ECF Entry 11-1 p. 3) (emphasis added). In its August 9, 2019, order, this Court held: "There is

nothing in this sentence to indicate that $500.00 is the exclusive remedy or that the Employer may

not seek injunctive relief in addition to this $500.00." (ECF Entry 41 p. 7). Sink Jr. *et al.* would

respectfully submit this holding is in error. The cardinal rule of contract interpretation under South

Carolina law is to ascertain and give legal effect to the parties' intentions as determined by the

contract language. *Schulmeyer v. State Farm Fire and Cas. Co.*, 579 S.E.2d 132, 134 (S.C. 2003).

Where the contract's language is clear and unambiguous, the language alone determines the

contract's force and effect. *Schulmeyer*, 579 S.E.2d at 134. A contract is read as a whole document so that one may not create an ambiguity by pointing out a single sentence or clause. *Id.* This principle requires that there be consistent usage of terms throughout the contract; accordingly, one may presume that the same words used in different parts of a contract have the same meaning. 17A Am. Jur. 2d *Contracts* § 355 (Supp. 2019); *cf. Travelscape, LLC v. S.C. Dep't of Revenue*, 705 S.E.2d 28, 34 (S.C. 2011) (applying this presumption in the context of statutory construction). The word "only" appears twice in the Agreement. The second use of "only" establishes that individual suits under the Agreement are the exclusive manner by which an employee may seek relief (*i.e.* prohibiting class actions). Similarly, the first use of "only" establishes $500.00 in money damages as the exclusive final remedy Sink P.A. may obtain; the use of "only" consistently means "exclusive" in the Agreement. This usage of "only" is also consistent with the plain meaning of this word: "exclusively, solely". *Webster's Third New International Dictionary* 1577 (1981).

Sink P.A. is entitled to injunctive relief under the Agreement, but only on a temporary basis. The Agreement admittedly contains language allowing the arbitrator to enter injunctions: "The Arbitrator shall be fully empowered to enter injunctive relief…" (ECF Entry 11-1 p. 3). This is language from Sink P.A.'s form confidentiality and non-solicitation agreement. (Sink Jr. Decl. ¶ 4). Sink Jr. edited Sink P.A.'s form agreement, adding the following specific language: "[Sink P.A.] may only recover up to $500.00, including all costs and fees for all claims, as a total sum, against [Sink Jr.], agreeing that this represents full and final payment for all claims against [Sink Jr.] now and in the future." (ECF Entry 11-1 p. 3; Sink Jr. Decl. ¶ 4). This language, which is specific and separately negotiated, prevails over the more general language from Sink P.A.'s form agreement. *See e.g. Restatement (Second) of Contracts* § 203(d) (Supp. 2019) ("separately negotiated or added terms are given greater weight than standardized terms or other terms not

separately negotiated"); *Restatement (Second) of Contracts* § 203(c) (Supp. 2019) ("specific terms and exact terms are given greater weight than general language"); *cf. Mims v. Alston*, 312 S.C. 311, 440 S.E.2d 357 (1994) (general rule of statutory construction is that a specific statute prevails over a more general one). Interpreting the general and specific relief provisions together, and giving both provisions effect, the Agreement allows for Sink P.A. to seek preliminary or temporary injunctive relief from either an arbitrator or a court of law; however, Sink P.A.'s total and exclusive final relief it can obtain from the arbitrator is $500.00 in money damages. This was, according to Sink Jr., the intent of this provision. (Sink Jr. Decl. ¶ 3(i)).

While a limitation to $500.00 in money damages may initially appear to be an unfavorable deal for Sink P.A., this Court must bear in mind that Sink Sr. was highly desirous of having his son and namesake to return to South Carolina to practice law with him, and eventually take over Sink P.A. (ECF Entry 21 ¶¶ 23-38, 42-59). The modification to limit damages, along with others (*e.g.* removal of Sink P.A.'s entitlement to attorneys' fees in the "Prevailing Party" section), would serve as a powerful enticement to Sink Jr. to practice with his father, and further serve as a sign of good faith from father to son, much like Sink Sr.'s offer of a $1.5 million severance package. (ECF Entry 21 ¶ 49(d)(i)). These changes were negotiated at arms-length. (Sink Jr. Decl. ¶¶ 3-5). Accordingly, this Court must enforce the Agreement as modified:

> "It is not the province of the court to alter a contract by construction or to make a new contract for the parties; its duty is confined to the interpretation of the one which they have made for themselves, and, in the absence of any ground for denying enforcement, to enforcing or giving effect to the contract as made, that is to enforce or give effect to the contract as made without regard to its wisdom or folly, to the apparent unreasonableness of the terms, or to the fact that the rights of the parties are not carefully guarded, as the court cannot supply material stipulations or read into the contract words which it does not contain so as to change the meaning of words contained in the contract."

*McPherson v. J.E. Sirrine & Co.*, 33 S.E.2d 501, 510 (S.C. 1945) (quoting 17 C.J.S., *Contracts*, § 296 (1936)).[3]

Sink Jr.'s March 8, 2019, tender of $500.00 (ECF Entry 21-5) provided Sink P.A. the exclusive and final remedy it was entitled to under the Agreement. As Sink P.A. was entitled to no other relief, its complaint(s) should have been dismissed with prejudice under Fed. R. Civ. P. 12(b)(6). A dismissal with prejudice under this rule acts as an adjudication on the merits. *McLean v. United States*, 566 F.3d 391, 396 (4th Cir. 2009). If Sink P.A.'s complaint(s) were dismissed on the merits, then arbitration proceedings under the Agreement would also be barred under the doctrine of *res judicata*. *Drag v. Southtrust Bank*, No. 3:04CV319-H, 2005 WL 1883241, at *6 (W.D.N.C. Aug. 4, 2005) ("…the All Writs Act empowers the court to enjoin parties from seeking to re-litigate in arbitration matters that have already been adjudicated by a federal court."); *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 139 (3rd Cir. 1998) ("the federal courts must intervene in the arbitration process when faced with res judicata objections stemming from a prior federal judgment."); *In re Y & A Grp. Sec. Litig.*, 38 F.3d 380, 382 (8th Cir. 1994) ("[n]o matter what, courts have the power to defend their judgments as res judicata, including the power to enjoin or stay subsequent arbitrations."). Accordingly, this Court should stay this action, and the related arbitration proceeding, pending appeal.

---

[3] Sink Sr.'s allegation he did not review the Agreement before signing is of no moment; a person who signs a contract or other written document cannot avoid the effect of the document by claiming he did not read it. *E.g. Sims v. Tyler*, 281 S.E.2d 229, 230 (S.C. 1981); *Evans v. State Farm Mut. Auto. Ins. Co.*, 239 S.E.2d 76, 77 (S.C. 1977); *Regions Bank v. Schmauch*, 582 S.E.2d 432 (S.C. 2003). Further, Sink Jr.'s declaration sets forth how the Agreement was a negotiated document. (Sink Jr. Decl. ¶¶ 3-5).

D.    **Sink P.A.'s claimed irreparable harm is based on a legal presumption that is no longer good law.**

In opposing Sink P.A.'s motion for preliminary injunction, Sink Jr. *et al.* maintained that a court may no longer presume irreparable harm if a movant shows a likelihood of success on a trademark infringement claim. This Court held Sink Jr. *et al.*'s argument "lack[ed] the requisite legal and logical support." (ECF Entry 41 p. 28). Sink Jr. *et al.* respectfully submit that the Court's position is clear error. As the Eighth Circuit recently observed:

> …Two of our sister circuits have abandoned the traditional presumption in trademark cases in light of *Winter* and *eBay. See Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 216 (3d Cir. 2014); *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013); *see also N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1228-29 (11th Cir. 2008) ("[A] strong case can be made that *eBay*'s holding necessarily extends to the grant of preliminary injunctions under the Lanham Act.").

*Phyllis Schlafly Revocable Trust v. Cori*, 924 F.3d 1004, n.3 (8th Cir. 2019); *see also* 5 Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30.47.30 (5th ed. 2019) ("Some courts have either hinted, indicated or outright held that the U.S. Supreme Court's 2006 decision in [*eBay v. MercExchange, LLC*, 547 U.S. 388 (2006)] eliminates the traditional presumption of irreparable injury triggered if a likelihood of success on the merits of trademark infringement is proven."); *Pro-Concepts, LLC v. Resh*, No. 2:12CV573, 2013 WL 5741542, at *21 (E.D. Va. Oct. 22, 2013) ("It is unlikely that the presumption alleged in the context of trademark infringement remains viable after the Supreme Court's decision in *Winter*"). The Supreme Court in *eBay* held: "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *eBay*, 547 U.S. at 394. Because a presumption of irreparable harm deviates from traditional principles of equity,

the Third and Ninth Circuits have done away with this presumption in injunctions under the Lanham Act. *Ferring*, 765 F.3d at 215-16; *Herb Reed*, 736 F.3d at 1242.

The Supreme Court's decision in *eBay* controls this case, as the presumption of irreparable harm conflicts with traditional principles of equity. This Court has already acknowledged that, under *eBay*, a presumption of irreparable harm is not appropriate in copyright infringement cases. *See Bethesda Softworks, LLC v. Interplay Enter. Corp.*, Op. No. 11-1860 (4th Cir. October 26, 2011) (unpublished); *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007). Holding that only trademark infringement cases are entitled to a presumption of irreparable harm has no basis in light of *eBay* and *Christopher Phelps*. Further, Sink Jr. *et al.* would respectfully submit that the *Scotts Co.* and *Lone Star* decisions[4] cited by this Court to support a presumption of irreparable harm are inapposite, as both were decided before *eBay*.[5] Sink P.A.'s request for a preliminary injunction must therefore be analyzed under *Winter*, which held:

> Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction…Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.

*Winter*, 555 U.S. at 375-76 (citations removed) (emphasis in original). Sink P.A. presented no evidence of irreparable harm in support of its injunction, relying instead on a presumption of irreparable harm it obtained by operation of law. (ECF Entry 40 pp. 27-28). Without evidence,

---

[4] *Scotts Co. v. United Industries Corp.*, 315 F.3d 264 (4th Cir. 2002); *Lone Star Steakhouse & Saloon v. Alpha of Va., Inc.*, 43 F.3d 922 (4th Cir. 1995)

[5] Both were also decided under the *Ancien Régime* of preliminary injunction analysis set forth in *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189 (4th Cir. 1977), which was abrogated by the Supreme Court in *Winter*. *Real Truth*, 575 F.3d at 347.

Sink P.A. cannot make the "clear showing" required under *Winter*, and this Court should have never issued its injunction.

> **E.      Sink P.A. trademark registration number 4,620,500 must be cancelled for fraud.**

This Court based its injunction on Sink Jr. *et al.*'s alleged infringement of Sink P.A.'s federal registration number 4,620,500 (the "'500 mark"). (ECF Entry 41 p. 16). This registration is the product of fraud upon the USPTO and must be cancelled. To prove fraud upon the USPTO, Sink Jr. must prove by clear and convincing evidence that the registrant knowingly made false, material misrepresentations of fact and intended to deceive the patent office in its trademark application. *See In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009); *Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*,148 F.3d 417, 420 (4th Cir. 1998). A false representation must be material in the sense that "a reasonable examiner would have considered it important in deciding whether to issue the registration." *Fair Isaac Corp. v. Experian Info. Solutions Inc.*, 711 F.Supp.2d 991, 998 (D.Minn. 2010) (internal citation and quotation omitted); *see also Orient Exp. Trading Co. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 653 (2nd Cir. 1988) (describing a material fact as "one that would have affected the PTO's action on the applications"); *In re Colt Indus. Operating Corp.*, 221 U.S.P.Q. 73, 1983 WL 51834, at *3 (TTAB Nov. 25, 1983) (describing a material fact as one "which, if transmitted to the Office, would have resulted in the refusal of the registration sought").

As part of the registration process, a trademark registrant must affirm, under oath, that he "believes" himself to be the owner of the mark sought to be registered and that "to the best of his knowledge and belief" no other person has the right to use the mark in commerce. *See Maurag, Inc. v. Bertuglia*, 494 F.Supp.2d 395, 399 (E.D. Va. 2007) (citing 15 U.S.C. § 1051(a)(3)(A), (A)(3)(D)). "The oath is phrased in terms of a subjective belief, such that it is difficult to prove

fraud so long as the affiant or declarant has an honestly held, good faith belief." *Resorts of Pinehurst*, 148 F.3d at 420 (citations and internal alterations omitted).

While this appears to be a high threshold to meet, the record contains significant uncontradicted evidence supporting Sink P.A.'s subjective knowledge of an infringing use. On April 25, 2019, Sink P.A. filed a Section 7 Request (15 U.S.C. § 1057(h)) regarding the '500 Registration, attempting to change the entity that owns this registration and attempting to change its date of first use.[6] (ECF Entry 20-3). Sink P.A.'s Section 7 Request also represents that it is using the mark in commerce pursuant to 15 U.S.C. § 1051(a). (ECF Entry 20-3 p. 5). This statute provides, in relevant part:

> The statement [of use] shall be verified by the applicant and specify that…to the best of the verifier's knowledge and belief, no other person has the right to use such mark in commerce either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods of such other person, to cause confusion, or to cause mistake, or to deceive…

15 U.S.C. § 1051(a)(3). However, on April 25, 2019 (the date of the Section 7 Request), Sink P.A. was well aware of Sink Jr.'s right to use GEORGE SINK, as roughly a month earlier he requested Sink Jr. transfer this right. (ECF Entry 21 ¶¶ 17-20). Accordingly, Sink P.A. could not have had an "honestly held, good faith belief" on April 25, 2019, that no other person had a right to use a mark similar to the '500 Mark. Further, Sink P.A.'s Section 7 Request was also made after Sink Jr. filed his March 6, 2019, letter of protest before the USPTO in Sink Sr.'s attempted registration

---

[6] The '500 Registration's original date of first use ("At least as early as 01/01/1975") was unequivocally false. (ECF Entry 20-1). On January 1, 1975, George Sink, Sr. was "practicing in a small firm," and was not a solo practitioner until 1977. (ECF Entry 14-1 ¶ 2). Further, George Sink, Sr.'s corporate entity, which was created in 1997, was originally named "Accident & Injury Law Offices of George Sink, P.A.", and did not change its name to "George Sink, P.A. Injury Lawyers" until years later. (ECF Entry 14-2 ¶ 2; ECF Entry 14-4). Unfortunately, this blatant falsehood cannot be grounds for cancellation unless the date of use postdates the date of filing. *E.g. Lewis v. Microsoft Corp.*, 410 F. Supp. 2d 432 (E.D.N.C. 2006), *aff'd*, 222 F.App'x 290 (4th Cir. 2007)

of GEORGE SINK. (Sink Jr. Decl. Ex C). As Sink P.A.'s Section 7 Request was a fraud upon the USPTO, it should be cancelled. *See* 15 U.S.C. § 1119 (cancellation of registration).

F.    **Sink P.A.'s trademarks lack secondary meaning.**

GEORGE SINK predominates all of Sink P.A.'s advertising. The millions of dollars in advertisements and promotions described by Sink P.A. have created fame and notoriety for George Sink, Sr., not the professional corporation that operates a law firm. The child described in Sink P.A.'s memorandum who asked for the "all 9s" party did not ask for a *Sink P.A.*-themed party – he asked for a *George Sink*-themed party. (ECF Entry 14-1 p. 7; ECF Entry 14-8). Other exhibits advanced by Sink P.A. refer to the individual known as George Sink, not his firm. (ECF Entry 14-9 p. 2; ECF Entry 14-11 p. 2).[7] This distinction is significant, because as the owner of the trademarks in question, Sink P.A. must show the secondary meaning inures to the benefit of Sink P.A., not Sink Sr.:

> It makes no difference whether or not a person with the name the company claims as a protectable mark is in fact associated with the business. The key is whether the public will likely perceive the term as a personal name, not whether the public knows "the roster of corporate personnel."

2 Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 13:2 (4th ed. 2006) (citing *815 Tonawanda Street Corp. v. Fay's Drug Co., Inc.*, 842 F.2d 643, 648 (2nd Cir. 1988)). As Sink P.A. never proved such secondary meaning as to Sink P.A., the August 9, 2019 injunction was issued in error.

---

[7] The exhibit found at ECF Entry 14-11 p. 2 is especially instructive, as this person references Sink Sr. and Bill Green as individuals, but references the Joye Law Firm as an entity.

### G.    This Court's injunction was a mandatory injunction that requires extra scrutiny.

"Prohibitory preliminary injunctions aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending." *Pashby v. Delia*, 709 F. 3d 307, 319 (4th Cir. 2013). This Court has defined "status quo" in this context as "the last uncontested status between the parties which preceded the controversy." *Id.* at 320. This Court found the "last uncontested status" in this case was when Sink Jr. *et al.* began using GEORGE SINK professionally. (Entry 41 pp. 9-10). Sink Jr. *et al.* would submit this finding is in error: the "last uncontested status" between the parties was on or about February 4, 2019, when Sink Sr. requested that Sink Jr. assign Sink P.A. the rights to use his name professionally. (ECF Entry 21 ¶¶ 17-20). As this Court's August 9, 2019, injunction does not preserve the status quo, it is properly described as a mandatory injunction. *Pashby*, 709 F.3d at 320. While an appellate court reviewing an injunction is to apply an "exacting" in its abuse of discretion review of a prohibitory injunction, when a mandatory injunction is at issue, the "Court's 'application of this exacting standard of review is even more searching.'" *Pashby*, 709 F.3d at 319 (quoting *Sun Microsystems, Inc. v. Microsoft Corp. (In re Microsoft Corp. Antitrust Litig.)*, 333 F.3d 517, 524 (4th Cir. 2003), abrogated on other grounds by *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)). The Fourth Circuit's review of this injunction as a mandatory, rather than prohibitory, injunction greatly increases Sink Jr. *et al.*'s likelihood of success.

### II.    Sink Jr., *et al.* have been, and will continue to be, irreparably harmed.

While Sink P.A.'s claimed irreparable harm is based on a legal presumption that is no longer valid, its pleadings indicate that it also claims injury to its goodwill and reputation. (ECF Entry 17 ¶¶ 47, 49, 52, 59, 65, 74, 85; ECF Entry 14-1 pp. 27-28). It appears that Sink P.A. has

suffered injury to its goodwill and reputation, but not in the way it expected. Public sentiment has come down squarely against Sink P.A. and Sink Sr.:

(1) "Robbing the kid of using the name you'd encouraged him to professionally trade under for the last couple of years seems unfair." Joe Patrice, "Father Sues Son For Using His Own Name – This Is Why People Hate Lawyers", *Above the Law* (May 6, 2019). (ECF Entry 21-24 p. 5; ECF Entry 21-29 pp. 5-7).

(2) "Like father, like son, as the saying goes. Unless the son is too much like the father, and both are lawyers, in which case the father might sue the son for trademark infringement." Debra Cassens Weiss, "This is not your father's firm; suit pits dad against son over right to use first and last name", *ABA Journal* (May 2, 2019). (ECF Entry 21-29 p. 4).

(3) "But now that his son has opened up his own firm using the uncreative name George Sr. gave him, it's a legal matter." Timothy Geigner, "Intra-Family Trademark Violence: SR Sues JR For Using His Own Name In Law Firm Marketing", *techdirt.com* (August 20, 2019).

(4) "George Sink Jr. might be the son's legal name – but it's weird for him to use it, his father alleges." Kelly Weill, "Sink vs. Sink: South Carolina Lawyer Sues Son for Starting Law Firm With Their Shared Name", *The Daily Beast* (May 4, 2019). (ECF Entry 21-29 p. 2).

(5) Tweets, comments, and posts found on the internet excoriate and ridicule Sink Sr. and Sink P.A.; some even go as far as to allege Sink P.A.'s lawsuit is a publicity stunt. (ECF Entry 21-22 p. 2; ECF Entry 21-29 pp. 8-31).

(6) Sink Jr. has identified scores of other media coverage of this case. (Sink Jr. Decl. Ex D).

Sink P.A.'s wounds are self-inflicted. The relevant AAA rules allow an arbitrator to issue a preliminary injunction.[8] *See* Rule 32, *AAA Employment Arbitration Rules and Mediation Procedures* (Nov. 1, 2009). Instead of pursuing preliminary relief in a confidential arbitration proceeding, Sink P.A. chose to assert its claims in a public forum, inviting all the consequential public scrutiny and ridicule.

Unfortunately, Sink Jr. *et al.* are the collateral damage of Sink P.A.'s public relations blunder. Sink P.A. spent millions to build Sink Jr.'s reputation and professional identity as "George Sink, Jr.". Now Sink Jr.'s reputation, both in the legal community and in the public arena, is subject to ridicule and disparagement of his abilities, and a variety of other harms detailed in his declaration, including embarrassing Google search suggestions. (Sink Jr. Decl. ¶¶ 6-8, Ex. E). Some persons even allege that this lawsuit is a publicity stunt or conspiracy. (Sink Jr. Decl. ¶ 8(i); ECF Entry 21-22 p. 2; ECF Entry 21-29 pp. 10, 12). The existence of a preliminary injunction only lends credence to this dangerous speculation and ridicule.

To make a showing of irreparable harm, a movant must usually show that money damages or a later court decision will be inadequate to remedy the harm suffered. *MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*, 726 F.Supp.2d 604, 634 (W.D.Va.2010) (quoting *Canon, Inc. v. GCC Int'l, Ltd.*, 263 Fed.Appx. 57, 62 (Fed.Cir.2008)). Injuries in terms of money, time, and energy expended in the absence of a stay are not sufficient. *Hodges v. Shalala*, 127 F.Supp.2d 790, 792 (D.S.C. 2001). The damage to Sink Jr. *et al.*'s reputation (Sink Jr. Decl. ¶ 8) cannot be undone

---

[8]    32. Interim Measures

At the request of any party, the arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court, as stated in Rule 39(d), Award.

…

or fully quantified by money damages, but it can be mitigated by a stay of this Court's injunction and the underlying arbitration.

III.    **This Court's August 9, 2019, order works a greater hardship on Sink Jr. *et al.* than Sink P.A.**

This Court previously held "The effect on [Sink Jr. *et al.*] of granting the requested relief will not be too severe." (ECF Entry 41 p. 29). Sink Jr. *et al.* respectfully disagree.

> …if an appeal has some merit, then the district court should balance the parties' potential harms that would result from granting or denying the stay or injunction. Thus, even if the appeal does not have great merit, great harm to the appellant from denying the stay or injunction would justify the granting or an injunction, provided that the defendant would not suffer substantial harm from the granting of the stay or injunction.

20 James Wm. Moore, *Moore's Federal Practice* § 308.21 (3rd ed. 2016). As set forth in Argument II, the relief requested by Sink P.A. has worked great harm on all the parties to this action. However, this harm is attributable to the acts of Sink P.A., not Sink Jr. *et al.*; the equities demand that this Court issue a stay to protect Sink Jr. *et al.*, the blameless parties.

IV.    **The public interest supports Sink Jr.'s use of his name professionally.**

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). It is a correct proposition of law that "[p]reventing consumers from being confused serves the public interest". *Toolchex, Inc. v. Trainor*, 634 F.Supp.2d 586, 594 (E.D.Va. 2008). However, as set forth in Argument I.B, Sink P.A. has spent millions of dollars to make sure that there is no confusion between Sink Sr. and Sink Jr. These efforts have mitigated, to the point of elimination, any likelihood of confusion or confusion in the marketplace between the use of GEORGE SINK by Sink P.A. and Sink Jr. This Court's finding of minimal actual confusion is a result of Sink P.A.'s advertising efforts. (ECF Entry 41 pp. 24-26). Effectively, there is no actual confusion, considering that Sink Jr. estimates Sink P.A. received

over 140,000 calls since Sink Jr.'s termination. (ECF Entry 21 ¶¶ 121-122). *See George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 398 (4th Cir. 2009) ("Evidence of only a small number of instances of actual confusion may be dismissed as *de minimis*.").

Sink Jr. *et al.* would also respectfully submit that this Court failed to consider the consequences of its injunction to Sink Jr. under South Carolina's rules of professional conduct, and particularly Rule 5.6:

> A lawyer shall not participate in offering or making:
>
> (a) a partnership, shareholders, operating, employment, or other similar type of agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement…
>
> [1] An agreement restricting the right of lawyers to practice after leaving a firm not only limits their professional autonomy but also limits the freedom of clients to choose a lawyer. [Rule 5.6(a)] prohibits such agreements except for restrictions incident to provisions concerning retirement benefits for service with the firm.
> …

Rule 5.6, RPC, Rule 407, SCACR. The South Carolina Bar had the opportunity to interpret this rule in 1992, when a plaintiff's firm requested that a potential employee limit his practice of law after separation from the firm:

> The Agreement further provides that "in the event the Employee elects to have his/her name included in the Firm's television advertising . . . for a period of three (3) years after the Cancellation Date, if the Employee's employment with the Firm terminates for any reason. Employee shall not advertise Employee's service as an attorney in any television advertisement shown or broadcast in the Area as defined hereinabove." If the associate chooses not to include his name in the firm's television commercials, there will be no restrictions on the associate's future advertisements.

S.C. Bar Ethics Advisory Comm., Op. 92-22 (1992). This opinion stated: "The proposed Agreement constitutes an indirect restriction on the right to practice law. Such an indirect restriction on the right to practice constitutes a violation of Rule 5.6(a)." *Id.* This Court's injunction

acts as an indirect restriction on Sink Jr.'s ability to practice law in violation of Rule 5.6; it cannot be the public interest to mandate and condone violations of the Rules of Professional Conduct.

## V.     A stay is appropriate under the South Carolina Uniform Arbitration Act.

The arbitration proceeding includes as parties Defendants George Sink II Law Firm, LLC; George Sink Law Firm, LLC; and Southern Legal Association, LLC. None of these Defendants are parties to the Agreement, and thus not parties to its arbitration provision. Accordingly, a stay of arbitration is appropriate under the South Carolina Uniform Arbitration Act. See S.C. Code § 15-48-10(b) ("On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate."); *see also Morgan v Gilbert*, No. 2012CP1000580, 2012 WL 9046937, at *2 (S.C.Com.Pl. Feb. 27, 2012) ("…South Carolina Courts do not compel parties to arbitration who have not signed an arbitration agreement.") (citing *Mission Residential v. Triple Net Props., LLC*, 654 S.E.2d 888 (Va. 2008). The underlying arbitration must be stayed to determine if George Sink II Law Firm, LLC; George Sink Law Firm, LLC; and Southern Legal Association, LLC have a valid arbitration agreement with Sink P.A.

<u>Conclusion</u>

This action (including this Court's August 9, 2019, order and the underlying arbitration) should be stayed pending resolution of the appeal.

Dated: 10/09/19                                          /s/ Jason Scott Luck____
                                                         Jason Scott Luck (Fed. Id. 9696)
                                                         jluck@garrettlawsc.com
                                                         Garrett Law Offices, LLC
                                                         1075 E. Montague Ave.
                                                         North Charleston, SC 29405
                                                         843.554.5515 (phone)
                                                         843.747.3198 (telefax)
                                                         **Attorney for Defendants**