# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| GEORGE SINK, P.A. INJURY LAWYERS, )<br>)<br>Plaintiff,   )<br>)<br>v.   )<br>)<br>GEORGE SINK II LAW FIRM, LLC,   )<br>GEORGE SINK LAW FIRM, LLC,   )<br>SOUTHERN LEGAL ASSOCIATION, LLC,   )<br>and GEORGE ("TED") SINK, JR.,   )<br>)<br>Defendants.   )<br>) | Civil Case No. 2:19-cv-01206-DCN |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO POST BOND

Plaintiff George Sink, P.A. Injury Lawyers ("Plaintiff" or "Sink, P.A.") submits this Reply in support of its Motion to Post Bond as Security for Preliminary Injunction (DE 51 ("Motion")). Despite claiming that this Court erred by not requiring a bond as part of its Order granting Plaintiff's Motion for Preliminary Injunction, Defendants have opposed Plaintiff's Motion. (*See* Response in Opposition to Plaintiff's Motion to Post Bond, DE 55 ("Opposition")). Defendants' Opposition represents the height of judicial inefficiency. Defendants failed to address or raise the need for a bond at the preliminary injunction stage, have used this bond issue as a basis for their Motion to Stay Pending Appeal, and apparently intend to raise the lack of a bond with the U.S. Court of Appeals for the Fourth Circuit, all the while relying on case law showing that the Fourth Circuit will simply remand the issue back to this Court to set a bond. Plaintiff respectfully requests that the Court simply amend its Order now to set a bond as security for the preliminary injunction entered in this case.

1

**I.     This Court Retains Jurisdiction to Modify its Order to Set a Bond.**

Defendants' first argument in response to Plaintiff's Motion to Post Bond is that this Court's power to amend its Order granting the preliminary injunction is "limited" in a manner that precludes such modification. Notably, Defendants do not cite a single case applicable to the facts at issue here. None of the authority upon which Defendants rely addresses modification of a preliminary injunction order to require a bond, or otherwise supports the proposition that this Court lacks authority to amend its Order accordingly. Defendants' arguments instead rest on the broad conclusion that such a modification is outside the bounds of this Court's power to modify an order that is pending on appeal. The law cited by the parties shows otherwise.

The Fourth Circuit has expressly recognized the "judge-made doctrine" that "a district court does not lose jurisdiction to proceed as to matters in aid of the appeal." *In re Grand Jury Proceedings Under Seal*, 947 F.2d 1188, 1190 (4th Cir. 1991). This doctrine is "designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time." *Id.* That is precisely what is transpiring now before this Court and the Court of Appeals for the Fourth Circuit. Defendants have argued that they are likely to succeed on their appeal because, *inter alia*, the Court's Order did not set a bond. (Memorandum of Law in Support of Motion to Stay Pending Appeal, ECF No. 45-1, pp. 5-6). And in making this argument, Defendants cite the Fourth Circuit decision in *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411 (4th Cir. 1999). Yet in *Hoescht*, upon finding that a bond was necessary, the court simply remanded the case "for further proceedings, with instructions for the district court to fix an appropriate bond." *Id.* at 421. The *Hoescht* court also made clear that it was leaving the injunction "intact pending the district court's decision on remand." *Id.* at 424; *see also Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013) ("Because the district court correctly found that the [plaintiffs]

2

established the need for a preliminary injunction, we have decided to remand this case without vacating the order, which will allow the district court to remedy the order's Rule 65 defects. On remand, the district court must clarify its order and address the issue of security."). Defendants would have this Court and the Court of Appeals engage in a circuitous procedural exercise that would surely result in a "waste of time…from putting the same issue[] before two courts at the same time." By setting a bond now, this Court would "aid" in the appeal by relieving the Fourth Circuit of considering this bond issue, an issue which might otherwise require the Fourth Circuit to remand the case back to this Court to make the same modification that Plaintiff seeks now.

The case law cited by Plaintiff also shows that this authority flows from Fed. R. Civ. P. 62(d).[1] For example, in *Baron v. Strawbridge & Clothier*, the court found that in addition to its "plenary" and "inherent equitable" powers to modify an injunction, Rule 62 also provides authority to amend a preliminary injunction order during the pendency of an appeal to provide for a bond. 1986 U.S. Dist. LEXIS 25914, at *3-4 (E.D. Pa. May 5, 1986). Moreover, while Defendants contend that the setting of a bond would require "material changes" to the Court's Order (Opp. at 2), the *Baron* court characterized its failure to require a bond as "a ministerial or procedural error," and characterized its amendment as a mere correction of "the court's oversight." *Baron*, 1986 U.S. Dist. LEXIS 25914, at *2.[2]

At its core, Defendants argument appears to be premised on their contention that "[f]ixing the amount of a bond is a fact-intensive process," that the Court's Order "does not contain the

---

[1] Formerly Fed. R. Civ. P. 62(c).

[2] In their Opposition, Defendants attempt to argue around the case law cited by Plaintiff, relying on procedural points that are inapposite to the question before the Court. A review of each of these arguments (Opp. at 1 n.1) shows a distinction without a difference. Those cases do, in fact, show that when a preliminary injunction order is entered without the requirement of a bond, a federal district court retains authority during the pendency of an appeal to modify such order to fix a bond.

3

requisite findings to quantify the costs and damages to Defendants if this injunction is wrongly granted." (Opp. at 2, 3). Defendants claim that the Court would "need to re-open the record to obtain this evidence." (Opp. at 3). These arguments are belied by the record. Defendants had ample opportunity at the preliminary injunction stage to present argument and evidence to the Court regarding any purported harm that may befall Defendants if an injunction was wrongly entered. In opposition to Plaintiff's Motion for Preliminary Injunction, Defendants filed a 20-page opposition brief and a 135-paragraph Affidavit from Defendant Sink Jr. (with Exhibits A-Z and A1-A3). The supposed harm that would result from an improvidently issued injunction was explicitly addressed by Defendants' counsel during oral argument. For example, Defendants' counsel stated:

> The predicament our client finds himself in right now is he's a young lawyer and it was urged this morning there's been no disparagement of the public record. I believe it was the plaintiff's reply brief that said he was incompetent. And they did not want his incompetence splashing back over to them. He's a young lawyer, five months into a solo practice, trying to establish a practice for himself.
> \*     \*     \*
> The damage and harm done to our client, the defendants, by urging that the website be taken down for a while, he is in the very early stages of establishing himself as a lawyer, as he now had to since he lost his other job. We would urge that that -- that harm cannot be overlooked.

Transcript at 42:5-13, 18-23; *see also* Transcript at 53:16-18 ("[W]ere our client to be prohibited from using his own name, he would be hobbled in developing his practice along."). The record before the Court on this issue was further developed by Plaintiff's counsel during oral argument, in which she responded to these claims of harm that may arise from an injunction:

> [D]efendant's counsel argued that the Defendant Sink, Jr. would be damaged if he were forced to take down his website. To be very clear, we're not seeking to enjoin Defendant Sink, Jr. from practicing law or from having a website. What we are seeking is an injunction against use of the George Sink mark as a business name. They've got to pick a different name for their law firm. . . . And then within that, Your Honor, defendants have to pick a different domain name that doesn't include any of the dominant portions of our mark. They need to take down these 18 uses of

4

> the dominant portion of our mark on their website, in their meta tags, in their domain name that are directly trying to get higher Google rankings and direct consumers to their website. We are not trying to stop Sink, Jr. from being a lawyer or from having a website or from having his own law practice.

Transcript at 50:20-51:13. Finally, the Court's 32-page Order reflects its consideration of the parties' arguments and evidence on this point:

> The effect on defendants of granting the requested relief will not be too severe. George Sink Jr. will not be prevented from practicing law, but will merely need to clarify to the public that he is a separate business from Sink P.A. He will be required to change or temporarily remove his website, change or temporarily remove his business Facebook profile, change the infringing email addresses, and change his professional information on the various state bar websites.

Order at 29. Although the Court did not go on to set a bond based on the potential harm to Defendants, likely because Defendants did not request such a bond and otherwise did not make a meaningful showing of any possible harm, the Court can and should amend its Order to set a bond for a nominal amount. There is no basis for Defendants' contention that a re-opening of the record is required for the Court to set a bond now.

## II.     Defendants' Suggestion of a $1.5 Million Bond is Misplaced.

Defendants alternatively argue that if the Court does amend its Order to require Plaintiff to post a bond, the Court should "consider Sink Jr.'s salary at the time of termination and Sink Jr.'s promised $1.5 million severance package." (Opp. at 3). This argument overlooks the purpose of a Rule 65(c) bond, "which is to provide a mechanism for reimbursing an enjoined party for harm it suffers **as a result of an improvidently issued injunction**." *Hoechst Diafoil*, 174 F.3d at 421. This Court's injunction, which prohibits Defendants' from "using the GEORGE SINK mark in an infringing manner" (Order at 31), <u>does not preclude Defendant Sink Jr. from practicing law</u>, either for his own firm or any other firm. As a result, Sink Jr.'s salary at the time of his termination from Sink P.A. is irrelevant to any quantification of potential harm Defendants may suffer from being

5

enjoined from infringing Plaintiff's trademark rights. Nor does some purported "$1.5 million severance package" pertain to an injunction against trademark infringement. Defendant Sink Jr.'s termination from Sink P.A. was unrelated to any of the infringing activities which the Court Order enjoins. According to Defendants' representations to this Court, their infringing activities started after Sink Jr. was terminated. (Transcript at 53-54). Defendants are asking the Court to compare apples with oranges: any salary or alleged severance package from Sink Jr.'s prior employment with Sink P.A. is immaterial to whatever harm may befall Defendants from an improvidently issued injunction against trademark infringement.[3]

As Defendants have not shown any harm that will befall them if the Court erred in enjoining them from trademark infringement (and did not even raise the issue of a bond until months after being enjoined), and the Court has already found on the evidence that any harm to Defendants from the preliminary injunction will not be too severe, a nominal bond is appropriate.

## CONCLUSION

Plaintiff respectfully requests that the Court amend its Order to require the Plaintiff to post a bond of $100.00, or such other amount as the Court deems appropriate, as security for the preliminary injunction.

---

[3] Continuing with their misplaced attempts to recast the Court's injunction as somehow precluding Sink Jr. from being employed or practicing law, Defendants cite *Synthes, Inc. v. Gregoris* and *Marsh USA Inc. v. Schuhriemen* for the proposition that the Court should consider a calculation of 18 months' salary in setting a bond. (Opp. at 3). Both of these cases pertained to injunctions entered in employment actions to enforce restrictive covenants, rendering the defendants' salaries from their prior employers relevant to a determination of potential harm from preclusion of subsequent employment opportunities.

Date: October 30, 2019    Respectfully submitted,

s/Allan R. Holmes
Allan R. Holmes (Fed. ID# 1925)
Cheryl H. Ledbetter (Fed. ID# 11446)
GIBBS & HOLMES
171 Church Street, Suite 110
Charleston, SC 29401
(843) 722-0033 (telephone)
(843) 722-0114 (facsimile)
E-mail: aholmes@gibbs-holmes.com
         cledbetter@gibbs-holmes.com

Trudy H. Robertson
Federal ID No. 6211
MOORE & VAN ALLEN PLLC
78 Wentworth Street
Charleston, SC 29401
Telephone: (843) 579-7061
Facsimile: (843) 579-8722
E-mail: trudyrobertson@mvalaw.com

J. Mark Wilson (*pro hac vice*)
N.C. State Bar No. 25763
Kathryn G. Cole (*pro hac vice*)
N.C. State Bar No. 39106
Minnie Kim (*pro hac vice*)
N.C. State Bar No. 46173
MOORE & VAN ALLEN PLLC
100 North Tryon Street
Suite 4700
Charlotte, North Carolina 28202
Telephone: (704) 331-1000
Facsimile: (704) 331-1159
E-mail: markwilson@mvalaw.com
         katecole@mvalaw.com
         minniekim@mvalaw.com

*Attorneys for Plaintiff George Sink, P.A. Injury Lawyers*