**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

GEORGE SINK PA INJURY LAWYERS,   )
                                     )
               Plaintiff,          )
              v.                  )        2:19-cv-01206-DCN
                                       )
GEORGE SINK II LAW FIRM LLC,     )        **ORDER**
GEORGE SINK LAW FIRM LLC,        )
SOUTHERN LEGAL ASSOCIATION    )
LLC, and GEORGE ("TED") SINK, JR.,   )
                                       )
             Defendants.      )
                                       )

      This matter is before the court on defendants George Sink II Law Firm, LLC,

George Sink Law Firm, LLC, Southern Legal Association, LLC ("SLA"), and George

("Ted") Sink, Jr.'s ("Sink Jr.")[1] (collectively, "defendants") motion to stay the court's

order pending appeal, ECF No. 45, and motion to expedite, ECF No. 48; and on plaintiff

George Sink PA Injury Lawyers' ("plaintiff" or "Sink P.A.") motion to modify the

court's order, ECF No. 51. For the reasons set forth below, the court grants the motion to

modify, denies the motion to stay, and finds as moot the motion to expedite.

## I.  BACKGROUND

      This matter arises from a dispute between George Sink Sr. and his son, George

Sink Jr. According to the complaint, George Sink Sr. started Sink P.A. in 1997, since

which time he has used "GEORGE SINK-formative marks in connection with legal

services." ECF No. 17 ¶ 10. Plaintiff has expanded into 14 offices throughout South

---

[1] Plaintiff consistently refers to George Sink Jr. as "Ted," which is a nickname derived from his middle name Theodore that he has allegedly been known by for most of his life. The court leaves this moniker in the case title to reflect the case as plaintiff filed it but chooses to address this defendant by his birth name, as requested by defendants.

1

Carolina and Georgia. The firm advertises heavily on television, radio, billboards, mail, online, and through its website, www.sinklaw.com. Plaintiff owns U.S. Service Mark registration No. 3,849,776 ("the '776 registration" or "the '776 mark") for the GEORGE SINK, P.A. INJURY LAWYERS and design mark, which was issued on September 10, 2010 after the mark was allegedly first used in commerce as early as February 18, 1999. Plaintiff also owns U.S. Service Mark Registration No. 4,620,500 ("the '500 registration" or "the '500 mark") for the GEORGE SINK, P.A. INJURY LAWYERS mark, which was issued on October 14, 2014 and was allegedly used in commerce as early as February 18, 1999. Plaintiff alleges that these marks are associated with the firm's legal services and have acquired distinctiveness by having a secondary meaning to consumers. Plaintiff also claims that it has acquired common law rights in the GEORGE SINK marks, and that it has "expended significant resources in advertising and promoting its legal services" under these marks. Id. ¶ 22.

Plaintiff alleges that in March 2013, George Sink Jr.—who had previously worked in marketing in New York City for ten years—moved to Charleston to perform marketing work for plaintiff. George Sink Jr. then attended the Charleston School of Law and graduated in 2016. In March 2018, George Sink Jr. transitioned from plaintiff's marketing team to work as an entry-level attorney at the firm. On April 30, 2018, George Sink Jr. signed a Confidentially and Non-Solicitation Agreement ("the Agreement") with Sink P.A. The "circumstances surrounding entry into and the actual terms of [the Agreement] are set out by the Plaintiff's Amended Demand for Arbitration dated May 3, 2019." Id. ¶ 31. George Sink Jr. worked as an attorney for Sink PA for eleven months and appeared in television advertisements with his father during that time. George Sink

Jr.'s employment with plaintiff was terminated on February 7, 2019. According to plaintiff, George Sink Jr. formed SLA on February 11, 2019 for the purposes of managing two other corporations, named Sink II and Sink III, that he also formed in February 2019.

Plaintiff alleges that defendants "have been using in commerce the designations GEORGE SINK and GEORGE SINK II in connection with" the offering and marketing "of identical legal services in the same geographical regions as plaintiff." Id. ¶ 34. Plaintiff claims that these uses violate its exclusive right to use its protected mark. Plaintiff alleges various instances of confusion among the public from defendants' use of plaintiff's marks.

Plaintiff filed this lawsuit on April 25, 2019, and filed an amended complaint on May 21, 2019, bringing the following claims: (1) trademark infringement in violation of 15 U.S.C. § 1114; (2) unfair competition in violation of 15 U.S.C. § 1125(a); (3) cybersquatting in violation of 15 U.S.C. § 1125(d); (4) common law trademark infringement; (5) unfair trade practices in violation of S.C. Code § 39-5-20 et seq.; and (6) dilution in violation of S.C. Code § 39-15-1165. ECF No. 17. On May 21, 2019, plaintiff also filed a motion requesting permission to file under seal the Amended Demand for Arbitration filed by plaintiff against George Sink Jr. pursuant to the arbitration clause of the Agreement. ECF No. 16. On June 7, 2019, defendants filed a motion to dismiss for failure to state a claim. On May 15, 2019, plaintiff filed a motion for preliminary injunction, ECF No. 14.

On August 9, 2019, the court issued an order granting plaintiff's motion to seal, denying defendants' motion to dismiss, and issuing a preliminary injunction in favor of plaintiff (the "August 9 Order"). ECF No. 41. The court ordered the following relief:

> The court orders defendants to temporarily refrain from using the GEORGE SINK mark in an infringing manner. Specifically, the court enjoins defendants from using GEORGE SINK as a professional email address. The court enjoins defendants from using GEORGE SINK LAW FIRM as the web address for the law firm's website. The court enjoins defendants from using GEORGE SINK II LAW FIRM as the title of its website. Likewise, the court enjoins defendants from listing the name GEORGE SINK LAW FIRM on its website. This order applies to defendants' use of these marks on its Facebook page, on the bar membership websites for the South Carolina and Georgia state bars, and in any other public or online space in which these marks are being used. The relief granted in this order is temporary, pending the final ruling by the Arbitrator on the matters that have been submitted by the parties to arbitration.

ECF No. 41 at 31. The August 9 Order did not require plaintiff to post a bond and did not otherwise discuss the requirement to provide security for defendants' rights. On August 30, 2019, defendants appealed the August 9 Order's issuance of the preliminary injunction to the Fourth Circuit, where the appeal remains pending.

On October 9, 2019, defendants filed a motion to stay the August 9 Order pending resolution of their appeal to the Fourth Circuit. ECF No. 45. Plaintiff responded to the motion to stay on October 23, 2019, ECF No. 53, to which defendants replied, ECF No. 59. On October 10, 2019, defendants filed a motion to expedite the court's consideration of its motion to stay, ECF No. 48, to which defendants responded, ECF No. 50. On October 11, 2019, plaintiff filed a motion to modify the August 9 Order, ECF No. 51, to which defendants responded on October 25, 2019, ECF No. 55. Plaintiff replied on October 30, 2019. ECF No. 58. The court held a hearing on these matters on October 31, 2019. Therefore, these matters are now ripe for the court's review.

## II.  STANDARD

### A.  Motion to Modify

 "While an appeal is pending from an interlocutory order . . . that grants . . . an injunction, the court may . . . modify . . . an injunction on terms for bond or other terms that secure the opposing party's rights. . . ." Fed. R. Civ. P. 62(d).[2]

### B.  Motion to Stay

Fed. R. Civ. P. 62(d), the same rule that gives the court authority to modify a preliminary injunction, gives the court the power to stay an issued injunction: "[w]hile an appeal is pending from an interlocutory order . . . that grants . . . an injunction, the court may suspend . . . or grant an injunction. . . ."  A court considering a motion to stay under Rule 62(d) must balance the following factors:  (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies. Hilton v. Braunskill, 481 U.S. 770, 776 (1987); Kirby v. General Elec. Co., 210 F.R.D. 180, 195 (W.D.N.C. 2000).  "Since the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules."  Hilton, 481 U.S. at 776; Miller v. Brown, 265 F.Supp.2d 584, 596 (E.D. Va. 2006).  "A stay of this kind is considered extraordinary relief for which the moving party bears a heavy burden."  Ohio Valley Envtl. Coal., Inc. v. Pruitt, 2017 WL 1712527, at *2 (S.D.W. Va.

---

[2] Fed. R. Civ. P. 62(d) was formerly codified as Fed. R. Civ. P. 62(c). Therefore, caselaw throughout this order may refer to Rule 62(c) in analysis now applicable to Rule 62(d).

May 2, 2017) (citing <u>Personhuballah v. Alcorn</u>, 155 F. Supp. 3d 552, 558 (E.D. Va. 2016)) (internal quotation marks omitted).

## III.  DISCUSSION

Defendants' motion to stay asks this court to stay the preliminary injunction issued by its August 9 Order during the pendency of their appeal of that order to the Fourth Circuit.  In other words, defendants seek an injunction to enjoin the court's previously issued injunction.  Defendants argue that they satisfy the four-factor test such that this court should stay the preliminary injunction during the pendency of their appeal. Instead of filing a response to defendants' motion to stay, plaintiff first filed a motion to modify the August 9 Order, asking the court to cure the defect of the preliminary injunction by modifying it to include a requirement that plaintiff post a bond that secures defendants' rights.

Because the court finds that it has the jurisdiction to modify the preliminary injunction, and because such modification would resolve the defect of the preliminary injunction, the court grants plaintiff's motion to modify the court's August 9 Order. Additionally, the court denies defendants' motion to stay because the modification of the August 9 Order cures the reversible procedural defect of the preliminary injunction and defendants fail to show that a stay is otherwise warranted.  Because resolution of the motion to modify is necessary to properly analyze the motion to stay, the court addresses the motion to modify first.

### A.  Motion to Modify

Plaintiff asks the court to "modify its August 9 Order to require the Plaintiff to post a nominal bond, or other amount as the Court in its discretion may determine, as a

security for the previously issued preliminary injunction." ECF No. 51 at 3. At a hearing held on October 31, 2019, defendants conceded that the court had jurisdiction to modify the preliminary injunction. Because the court was required under the federal rules to set a bond and because it retains jurisdiction over the preliminary injunction to modify it, the court grants plaintiff's motion and modifies the injunction to include a bond.

Under Fed. R. Civ. P. 65(c), "a court may issue a preliminary injunction only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Although "the district court retains the discretion to set the bond amount as it sees fit or waive the security requirement," it "must expressly address the issue of security before allowing any waiver and cannot disregard the bond requirement altogether." Pashby v. Delia, 709 F.3d 307, 332 (4th Cir. 2013) (citing Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 421 (4th Cir. 1999)). Because a preliminary injunction clearly requires a security under the federal rules, courts have found a district court's failure to address the issue reversible error. See Hoechst Diafoil, 174 F.3d at 421.

The August 9 Order issued a preliminary injunction in favor of plaintiff that temporarily enjoins defendants from using plaintiff's mark in an infringing manner while the merits of the action are resolved through arbitration. The August 9 Order, however, did not address the issue of a bond or other security. Although neither party argued for the issuance of a bond or otherwise mentioned the issue of security in their briefings or at the hearing on the preliminary injunction, the August 9 Order's failure to address the

issue nevertheless constitutes reversible error.[3]  However, for the reasons discussed below, the court retains jurisdiction over the preliminary injunction to modify it, even in the face of a pending appeal.

Generally, "the timely filing of a notice of appeal confers jurisdiction in the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Dixon v. Edwards, 290 F.3d 699, 709 (4th Cir. 2002) (citing Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982)) (internal quotation marks omitted).  But that rule is not absolute.  "One exception to the rule is that a district court does not lose jurisdiction to proceed as to matters in aid of the appeal." Grand Jury Proceedings Under Seal v. United States, 947 F.2d 1188, 1190 (4th Cir. 1991) (citing In re Thorp, 655 F.2d 997, 998 (9th Cir. 1981)).  "The rule is a judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time." Id. (citing Thorp, 655 F.2d at 998).

In Dixon v. Edwards, the Fourth Circuit held that in modifying an injunction to correct a clear error during the pendency of an appeal of that injunction, a district court did just that—aided the appeal and avoided the unnecessary expenditure of appellate resources.  290 F.3d 699, 720 n. 14 (4th Cir. 2002); see also Lytle v. Griffith, 240 F.3d 404, 408 (4th Cir. 2001) (finding that a district court possessed jurisdiction to modify its

---

[3] The court is a might perplexed that the question of the bond amount did not deserve mention in the parties' briefing nor at the preliminary injunction hearing.  What they did not deign to express at the hearing has morphed into a critically important issue after the injunction issued.  The court knows not whether this "oversight" was due to strategy or sloth, but because of the quality of the lawyers on both sides, the court will chalk it up on the strategy side of the ledger (however curious the strategy was).  This issue might be summed up by a corollary of an old saw, "be careful what you don't ask for because you won't get it."

preliminary injunction order during the pendency of appeal and, in so doing, "aided in [the] appeal by relieving [the Fourth Circuit] from considering the substance of an issue begotten merely from imprecise wording in the injunction.").  Further, the Fourth Circuit has recognized, in dicta, that a district court's power under Fed. R. Civ. P. 62(d) "applies to allow the district court to make provision for the security of the rights of the adverse party" during the pendency of an appeal.  Lewis v. Tobacco Workers' Int'l Union, 577 F.2d 1135, 1139 (4th Cir. 1978) (discussing Fed R. Civ. Pro. 62(c), which is now Fed. R. Civ. P. 62(d)).

Finally, the court finds the holding and analysis of Baron v. Strawbridge & Clothier, 1986 U.S. Dist. LEXIS 25914 (E.D. Pa. May 5, 1986), persuasive.  The circumstances before that court were very similar to the circumstances present here.  There, as here, the district court issued a preliminary injunction in favor of the plaintiff but failed to provide for security as required by the federal rules.  Under those circumstances, the district court found that it had "the jurisdiction and the duty to correct what amounts to a ministerial or procedural error."  Baron, 1986 U.S. Dist. LEXIS 25914, at *2.  Four legal principles served as the foundation for the court's conclusion.

First, the court noted the spirit of the Federal Rules:

> Fed. R. Civ. P. 1 explicitly states that the rules of procedure shall be construed to secure the just determination of every action.  As Mr. Justice Black observed, "the principle function of procedural rules should be to serve as useful guides to help, not hinder, persons who have a legal right to bring their problems before the courts."

Id. at *3 (citing Order Adopting Revised Rules of S. Ct. of U.S., Mon. April 12, 1954).  Second, the court concluded that Fed. R. Civ. P. 62(d) vested it with the authority to modify the injunction during the pendency of an appeal because the modification secured

the rights of the defendant, the party adverse to the preliminary injunction.  Id. at *3–4.
Third, the court interpreted Fed. R. Civ. P. 62(d) as providing the authority for the court
to act sua sponte.  Id. at *4–5.  Fourth, the court found that it had the inherent equitable
power to modify the injunction:

> Justice requires that the court's oversight be corrected, and it is within the
> plenary power of the court to do so.  See 7 J. Moore, Moore's Federal
> Practice, § 60.20 (2d ed. 1985).  Federal courts have an inherent equitable
> power to modify a decree of injunction.  United States v. Swift & Co., 286
> U.S. 106 (1932).  Consistent with this mandate, the Supreme Court has held
> that a district court may entertain a Rule 60(b) motion without leave of the
> appellate court.  Standard Oil Co. v. United States, 429 U.S. 17 (1976).  In
> the interest of justice, the preliminary injunction issued by this court should
> likewise be subject to modification without leave of the appellate court, in
> order to allow for a bond under Fed. R. Civ. P. 65(c).

Id. at 5.

The court agrees with the reasoning of Baron and similarly has both the

jurisdiction and the duty under these circumstances to modify the August 9 Order to

require plaintiff to post a bond that secures defendants' rights.  Such a modification,

although requested by plaintiff, secures the rights of defendants, the parties adverse to the

preliminary injunction.  If defendants are later found to be wrongfully enjoined, the

posted bond will serve as security for the damage defendants may suffer.  Moreover,

defendants are not prejudiced by the modification to the preliminary injunction because it

merely corrects a procedural defect and does not affect defendants' other substantive

arguments on appeal.  Further, such a modification aids the appeal by eliminating the

defect of the August 9 Order, preventing the expenditure of unnecessary judicial

resources.  For these reasons, the court grants the motion to modify its August 9 Order

and requires plaintiff to post a bond consistent with this order.

The next issue the court must consider is the amount of the bond that its modification requires plaintiff to post. Plaintiff argues that a nominal bond is sufficient to protect defendants' interests under the circumstances of the case. Defendants disagree that a nominal bond is appropriate and ask the court to consider Sink Jr.'s salary at the time of termination and Sink Jr.'s allegedly promised $1.5 million severance package. The court agrees with plaintiff that a nominal bond is appropriate under these circumstances.

A district court has wide discretion in determining an appropriate amount for a bond. <u>Hoechst Diafoil</u>, 174 F.3d at 421. "In fixing the amount of an injunction bond, the district court should be guided by the purpose underlying Rule 65(c), which is to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction or restraining order." <u>Id.</u> at 421 n. 3. Security is generally fixed in an amount covering "the potential incidental and consequential costs" as well as either the losses the wrongly enjoined party will suffer or the amount of the complainant's unjust enrichment during the period of prohibited conduct. <u>Id.</u> "Where the district court determines that the risk of harm is remote, or that the circumstances otherwise warrant, the court may fix the amount of bond accordingly. In some circumstances, a nominal bond may suffice." <u>Candle Factory, Inc. v. Trade Assocs. Grp., Ltd.</u>, 23 F. App'x. 134, 139 (4th Cir. 2001) (quoting <u>Hoechst Diafoil</u>, 174 F.3d at 421 n. 3).

The vital factor in determining a bond that adequately secures a party's rights is the harm the enjoined party would suffer from potential wrongful enjoinment. The court feels compelled to clarify the contours of its preliminary injunction, despite their clarity

in the August 9 Order.  Many of defendants' arguments with respect to the instant motions are premised on the incorrect assertion that the court's injunction enjoins Sink Jr. from practicing law.  The preliminary injunction does <u>not</u> preclude Sink Jr. from practicing law.  <u>Nor</u> does it prohibit Sink Jr. from advertising his legal services.  On this point, the August 9 Order is clear:  "George Sink Jr. is of course not barred from practicing law under his birth name, but in advertising for his legal services he must do more to differentiate between him and plaintiff."  ECF No. 41 at 27.  A plain reading of the August 9 Order makes clear that the injunction <u>only</u> enjoins Sink Jr. from infringing uses of the GEORGE SINK mark.  <u>See</u> <u>id.</u> at 31 ("The court orders defendants to temporarily refrain from using the GEORGE SINK Mark in an infringing manner.")  Compliance with the preliminary injunction simply requires Sink Jr. to cease infringement in connection with his law practice; it does not require Sink Jr. to cease practicing law.

Therefore, the harm defendants stand to suffer, in the event that the injunction is later determined to be wrongful, is the income they might lose by refraining from use of the GEORGE SINK mark in the marketing of their law practice during the life of the preliminary injunction.  Sink Jr.'s former salary at Sink P.A. is irrelevant to this inquiry.  So too is the amount to which Sink Jr. is allegedly entitled under any severance package.  Because Sink Jr. can still practice law and advertise his legal services without infringing on plaintiff's mark, the court does not find the potential harm to be severe.  Indeed, the court reached the same conclusion in determining the harm defendants would suffer as a result of the preliminary injunction:

> The effect on defendants of granting the requested relief will not be too
> severe.  George Sink Jr. will not be prevented from practicing law, but will

merely need to clarify to the public that he is a separate business from Sink P.A. He will be required to change or temporarily remove his website, change or temporarily remove his business Facebook profile, change the infringing email addresses, and change his professional information on the various state bar websites. Given that much of this requested relief can be accomplished with relative ease and may be reversed after a final decision is issued from the Arbitrator, the court finds that the balance of equities weighs in plaintiff's favor.

Id. at 29.

The court finds that a nominal bond is appropriate here for two reasons. First, plaintiff has shown strong likelihood of success on the merits. See Arkansas Best Corp. v. Carolina Freight Corp., 60 F. Supp. 2d 517, 521 (W.D.N.C. 1999) ("Circumstances in the instant case warrant the posting of only a nominal bond in that Plaintiffs have shown a strong likelihood of success on the merits."). Second, defendants are not at risk of suffering severe harm from the mandates of the injunction. See Candle Factory, 23 F. App'x at 139 (finding a nominal bond appropriate where defendant "would suffer little harm if enjoined from further selling" of infringing product). Therefore, the court modifies its August 9 Order to require plaintiff to post a $500.00 bond for the security of defendants' rights.

## B. Motion to Stay

Defendants ask the court to "stay this action, particularly its August 9, 2019, order [sic] and the related arbitration proceeding, to protect Sink Jr. et al. from further harm while the Fourth Circuit Court of Appeals considers their arguments." ECF No. 45 at 4. Because defendants cannot show that a stay pending appeal is appropriate, the court denies defendants' motion to stay.

"A trial court has a long-established right to make orders appropriate to preserve the status quo while a case is pending on appeal[,] and this right is codified by the rule on

13

injunctions pending an appeal." Abdi v. Nielsen, 287 F. Supp. 3d 327 (W.D.N.Y. 2018) (citing Fed. R. Civ. P. 62(d)). "[I]t is sometimes necessary to require a party who has recently disturbed the status quo to reverse its actions, but . . . [s]uch an injunction restores, rather than disturbs, the status quo ante." Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 378 (4th Cir. 2012).

When considering whether to stay an order pending appeal under Rule 62(d), courts consider "(1) whether the applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and (4) where the public interest lies." Hilton, 481 U.S. at 776. "A stay of this kind is considered extraordinary relief for which the moving party bears a heavy burden." Ohio Valley, 2017 WL 1712527, at *2 (citing Personhuballah, 155 F. Supp. 3d at 558) (internal quotation omitted). Motions for stay pending appeal are governed by the same standard as motions for preliminary injunction. McCammon v. United States, 584 F. Supp. 2d 193, 196 (D.D.C. 2008). Interestingly, then, the court applies the same standard it used in issuing an injunction in favor of plaintiff to determine if it should now stay that injunction during the pendency of defendants' appeal. The court addresses each factor in turn and finds that each weighs against granting a stay.

### a. Clear Showing of Success on the Merits

For this court to stay its August 9 Order and preliminary injunction, defendants must make a clear showing that they are likely to succeed on the merits of their appeal. See Hilton, 481 U.S. at 776. Although the likelihood-of-success inquiry requires defendants to make a clear showing that they are likely to succeed on appeal, they "need

not show a certainty of success." Pashby, 709 F.3d. at 321. A court of appeals evaluates a district court's decision to grant preliminary injunctions under an abuse of discretion standard, reviewing the district court's factual findings for clear error and its legal conclusions de novo. Id. at 319. Therefore, to show a clear likelihood of success on the merits on their appeal, defendants must clearly show that this court abused its discretion in issuing the preliminary injunction.[4]

Defendants make several arguments to show a clear likelihood of success on the merits of their appeal, a few which are identical to arguments made to this court in their opposition to the preliminary injunction. Specifically, defendants argue that the court abused its discretion in issuing the preliminary injunction because: (1) the August 9 Order failed to require a bond; (2) plaintiff acquiesced in defendants' use of the mark; (3) the Confidentiality and Non-Solicitation Agreement limited plaintiff's recovery; (4) plaintiff did not make a showing of irreparable harm; (5) plaintiff's trademark is invalid due to plaintiff's fraud; (6) plaintiff's trademark lacks secondary meaning; and (7) the injunction was mandatory. Each of these arguments is either cured by the motion to modify or without merit. Moreover, a number of these arguments have already been addressed and rejected by this court.[5] As such, the court finds that defendants have not

---

[4] In their motion to stay, defendants claim that "[i]n order to succeed in their appeal, Sink Jr. et al. must show that Sink P.A. did not make a clear showing of the elements of a preliminary injunction to this Court." ECF No. 45-1 at 5. Not so. This contention misstates and lowers the defendants' burden. The Fourth Circuit will overturn the August 9 Order only if it finds that the court's findings were the result of an abuse of discretion. This is the standard defendants must meet to show a likelihood of success on appeal.

[5] When a court has rejected arguments asserted in opposition to a preliminary injunction, it is not required to address identical argument subsequently levied in support of a stay. See South Carolina v. United States, 2018 WL 3120647, at *2 (D.S.C. June 26,

shown a likelihood of success on the merits of their appeal.  The court addresses each

argument in turn.

### 1.  Failure to Require a Bond

Defendants' first argument—that their appeal is likely to succeed because the

August 9 Order failed to require a bond—has merit.  Discussed above, Fed. R. Civ. P.

65(c) requires an issuing court to fix a bond or at least address the issue of security in

granting a motion for preliminary injunction.  Even though defendants failed to ask for a

bond, the court's failure to do so is reversible error.  However, that defect in this case is

cured by plaintiff's motion to modify, which the court grants here pursuant to the above

analysis.  Because this order requires plaintiff to post a bond that secures the rights of

defendants, that ground for appeal is moot.  Therefore, this court's failure to address the

issue of a security requirement can no longer serve as the basis for a successful appeal of

the August 9 Order.  Thus, this argument does not show a likelihood of success on the

merits of defendants' appeal.  No #1.

### 2.  Plaintiff's Acquiescence

Defendants next argue that plaintiff is estopped from claiming infringement

because plaintiff acquiesced in defendants' use of the mark.  Defendants derive this

alleged acquiescence from plaintiff's promotion of Sink Jr. during his employment as a

lawyer with Sink PA.  The court agrees with plaintiff that defendants' estoppel by

acquiescence defense "conflates the use of 'George Sink' as a mark or trade name or

business name versus an individual's name."  ECF No. 53 at 7.  While plaintiff promoted

---

2018) (declining to address arguments for a stay already rejected in granting an
injunction).

Sink Jr. as a lawyer working for Sink PA using his given name, it certainly never acquiesced to his use of the GEORGE SINK marks to promote his own independent legal services. The argument that promoting Sink Jr. as a lawyer-employee of Sink PA amounts to plaintiff's consent to defendants' use the GEORGE SINK marks in their own business ventures is unconvincing.

Moreover, the court already considered and rejected this argument. Defendants asserted their acquiescence by estoppel argument in opposition to the preliminary injunction.[6] The court rejected this argument in its August 9 Order, holding that "[i]t is undisputed that plaintiff has not consented to defendants using the mark [to promote defendants' own legal services]." ECF No. 41 at 17. The court correctly rejected this argument in its August 9 Order, and it rejects it again here. For these reasons, this argument does not show a likelihood of success on the merits of defendants' appeal. No # 2.

### 3. Confidentiality and Non-Solicitation Agreement

Defendants next argue that plaintiff is barred from recovery in excess of $500.00 according to the terms of the Confidentiality and Non-Solicitation Agreement between Sink Jr. and plaintiff. The arbitration clause of the Agreement, defendants argue, limits ultimate recovery for claims by Sink P.A. against employees to $500.00. As such, they contend, Sink P.A. cannot seek temporary injunctive relief from this court. Here, defendants again resurrect an argument already rejected by this court. Considering this contention in its August 9 Order, the court stated:

---

[6] ECF No. 20 at 15–17 ("Plaintiff acquiesced in and consented to Defendant George Sink's use of his name for the practice of law . . . .").

> [w]hen reading the [arbitration] clause in totality, it is clear to the court that this $500.00 provision exists merely to limit the amount of money damages that the Employer can receive. There is nothing in this sentence to indicate that $500.00 is the exclusive remedy or that the Employer may not seek injunctive relief in addition to this $500.00. To the contrary, just a few sentences above this $500.00 provision, the arbitration clause clearly states that the Arbitrator may enter injunctive relief and that the parties may seek temporary injunctive relief from a court while awaiting the Arbitrator's decision. Thus, the court denies the motion to dismiss on this ground.

ECF No. 41 at 7. Defendants have presented no additional evidence nor pointed the court to any additional law that might justify a departure from the court's above holding.

Moreover, even if the court were to accept defendants' interpretation, it would not provide a ground for a successful appeal. Defendants' argument, as the court understands it, is that the Agreement entitles Sink P.A. to seek temporary injunctive relief from a court, but the Agreement also limits Sink P.A.'s ultimate relief from the arbitrator to $500.00.[7] The court's August 9 Order grants Sink P.A. temporary injunctive relief. See ECF No. 41 at 31 ("The relief granted in this order is temporary, pending the final ruling by the Arbitrator on the matters that have been submitted by the parties to arbitration."). Defendants' interpretation of the contract cannot be a basis for overturning temporary injunctive relief since they concede that the Agreement entitles Sink P.A. to seek temporary injunctive relief. As such, this argument does not show a likelihood of success on the merits of defendants' appeal. No #3.

---

[7] Defendants state:

"Interpreting the general and specific relief provisions together, and giving both provisions effect, the Agreement allows for Sink P.A. to seek preliminary or temporary injunctive relief from either an arbitrator or a court of law; however, Sink P.A.'s total and exclusive final relief it can obtain from the arbitrator is $500.00 in money damages. This was, according to Sink Jr., the intent of this provision."
ECF No. 45 at 10.

#### 4. Plaintiff's Showing of Irreparable Injury

Defendants also refute the August 9 Order's finding that plaintiff would suffer irreparable harm in the absence of a preliminary injunction. Defendants argue that the court erred in holding that instances of trademark infringement give rise to a presumption of irreparable harm. "In Lantham Act cases involving trademark infringement, a presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion, the key element in an infringement case." Scotts Co. v. United Indus. Corp., 315 F.3d 264, 273 (4th Cir. 2002). Defendants rely on two cases that discuss the presumption of irreparable injury in the context of patent and copyright disputes and urge the court to extend those holdings to trademark law. These cases, however, are not applicable to cases of trademark infringement and do not provide this court with a valid basis to depart from well-settled law.

First, defendants urge the court to abandon the presumption of irreparable harm that arises in instances of trademark infringement based on eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006). Defendants' reliance on this case is puzzling because the Supreme Court's decision does nothing to delegitimize the presumption of irreparable injury that arises in cases of trademark infringement. The Supreme Court in eBay rejected a "categorical approach" in infringement cases under which injunctions automatically issue in every case of patent infringement barring extreme circumstances. Id. at 393–394. Instead, the court held that the four-factor test governs the issuance of preliminary injunctions and issuing courts must consider the equities implicated by each factor. Id. This holding is hardly a rejection of the presumption of irreparable injury that arises in cases of infringement, and defendants' conclusion to that effect is a bridge too

far, especially in the context of trademark infringement. Therefore, the court does not find this argument to be a basis for likely success on defendants' appeal.

Second, defendants cite Christopher Phelps & Assocs., LLC v. Galloway for the proposition that the Fourth Circuit has eliminated the presumption of irreparable harm in cases of copyright infringement. 492 F.3d 532 (4th Cir. 2007). Defendants' characterization of Christopher Phelps is misleading. There, the Fourth Circuit held that an underlying determination that plaintiff's copyright had been infringed did not automatically entitle it to injunctive relief. The court did not eliminate or even fail to apply the presumption of irreparable injury based on the finding of infringement, however. In fact, the court seemed to apply the presumption during its consideration of the four-factor test: "[i]rreparable injury often derives from the nature of copyright violations, which deprive the copyright holder of intangible exclusive rights." Id. at 544. Based on the foregoing, defendants' legal argument that the court improperly applied a presumption of irreparable injury falls flat.

Moreover, the court considered and rejected this legal argument in its August 9 Order, holding that defendants' argument lacked "the requisite legal and logical support." ECF No. 41 at 28. Because defendants have presented no additional legal or logical support since the court's August 9 Order, their argument remains uncompelling. Therefore, this argument does not show a likelihood of success on the merits of defendants' appeal.[8] No #4.

---

[8] Plaintiff argues that even absent the presumption, it has made a sufficient showing that irreparable harm would result absent the issuance of an injunction. The court declines to address the issue of whether plaintiff has made such a showing absent the presumption because it finds that the presumption applies.

### 5. Plaintiff's Alleged Fraud

Defendants next contend that their appeal will be successful because plaintiff's '500 mark "is the product of fraud upon the USPTO and must be cancelled." ECF No. 45 at 14. This argument is procedurally inappropriate and substantively meritless.

Procedurally, defendants' fraud argument cannot be a basis for a successful appeal because defendants have waived the right to make the argument on appeal. Defendants did not make this argument to the court during preliminary injunction proceedings. As such, they have waived their right to make the argument before the Fourth Circuit. See Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993) ("[I]ssues raised for the first time on appeal generally will not be considered. Exceptions to this general rule are made only in very limited circumstances . . . .") (internal citations omitted). Therefore, this argument does not show a likelihood of success on appeal.

Substantively, defendants' fraud argument is without merit and borders on being frivolous. Sink P.A. filed a request to amend its '500 mark pursuant to 15 U.S.C. § 1057(h) ("Section 7 request") on April 25, 2019. Defendants contend that the Section 7 request included an affirmation by Sink P.A. that no other person had the right to use the '500 mark. Defendants conclude that because Sink P.A. requested that Sink Jr. transfer his right to use the mark a month earlier, its affirmation that no one else had the right to use its mark was necessarily false and thus fraudulent. This argument twists logic beyond its furthest possible bounds. As an initial matter, plaintiff points out in its response that the affirmation on which defendants rely was not a part of plaintiff's Section 7 request because verification statements are only required for an application for registration, not for an amendment to an existing trademark. Practicalities aside, the

court agrees with plaintiff that "any purported demand that Sink Jr. 'sign away his rights' to his name, even if proven, would have no bearing on whether Defendants ever had any right to use the GEORGE SINK-formative mark 'in commerce' [] . . . ." ECF No. 53 at 14. Plaintiff has consistently maintained its position that defendants have no right to use the '500 mark. An alleged agreement between Sink Jr and Sink P.A. that the former transfer the rights to use his name to the latter, even if proven, would do nothing to show that Sink P.A. acted fraudulently in connection with their registration application and subsequent Section 7 request. Therefore, this argument does not show a likelihood of success on appeal. No #5.

### 6. Plaintiff's Showing of Secondary Meaning

Defendants next argue that the court erred in concluding that plaintiff made a showing of secondary meaning for its trademark. According to defendants, plaintiff's marketing and advertising efforts have given secondary meaning to George Sink, Sr., the human being, rather than Sink P.A., the law firm. This distinction is unconvincing for two reasons. First, the plaintiff's registration of both marks at issue with the USPTO establishes a prima facie showing that the mark is suggestive, and thus a showing of secondary meaning is not required. Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 172 (4th Cir. 2006). Defendants have not presented any evidence that rebuts this prima facie showing. Secondly, the plaintiff's marks clearly satisfy the Fourth Circuit's test for secondary meaning, as the court thoroughly explained in the August 9 Order. See ECF No. 41 at 20–21. Therefore, this argument does not show a likelihood of success on appeal. No #6.

### 7. Finding of Prohibitory Injunction

Finally, defendants argue that the court erred in finding that the injunction was prohibitory rather than mandatory. The court disagrees. "Prohibitory preliminary injunctions aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending." Pashby v. Delia, 709 F.3d 307, 319 (4th Cir. 2013). "The status quo to be preserved by a preliminary injunction, however, is not the circumstances existing at the moment the lawsuit or injunction request was actually filed, but the last uncontested status between the parties which preceded the controversy." Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 378 (4th Cir. 2012) (citing Stemple v. Bd. of Ed. of Prince George's Cnty., 623 F.2d 893, 898 (4th Cir. 1980). "To be sure, it is sometimes necessary to require a party who has recently disturbed the status quo to reverse its actions," but "[s]uch an injunction restores, rather than disturbs, the status quo ante." Id. (citing O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 1013 (10th Cir. 2004) and United Steelworkers of Am., AFL–CIO v. Textron, Inc., 836 F.2d 6, 10, (1st Cir. 1987).

Defendants contend that "the last uncontested status" before the present controversy should be defined as the time before Sink Sr. allegedly requested that Sink Jr. assign Sink P.A. the right to use Sink Jr.'s name professionally. Plaintiff contends that the controversy arose later, when Sink Jr. used the GEORGE SINK mark in commerce. The court agrees with plaintiff. The current controversy involves defendants' infringing use of the GEORGE SINK mark. Defendants have never contested that Sink Jr. may use his name to identify himself as an individual, nor have they asked the court to enjoin such a use. Therefore, there was no controversy until George Jr. used the GEORGE SINK

mark in commerce. The status quo of this case is the time prior to defendants' use of the mark in commerce. The current injunction, then, upholds rather than disturbs the status quo. Thus, the injunction is prohibitory. This argument does not show a likelihood of success on appeal. Because there are no grounds on which defendants can show a likelihood of success on their appeal, the court finds that the first factor weighs heavily in favor of denying a stay. No #7. Thus, the court's analysis of defendants' claim that the court abused its discretion in issuing the preliminary injunction results in seven "No's".[9]

### b. Irreparable Injury

The next factor the court considers in determining whether to stay its previously issued injunction is whether defendants will be irreparably injured absent a stay. To make this showing, defendants present evidence of general harms that have resulted from this lawsuit. However, defendants have failed to present any compelling evidence of irreparable harm caused by the issuance of the preliminary injunction. Further, they fail to argue how a stay of the preliminary injunction would prevent any of their alleged injuries. Therefore, the court finds that this factor weighs heavily in favor of denying a stay.

A showing of irreparable injury requires more than the mere "possibility" of being irreparably harmed; rather, the plaintiff must "demonstrate that irreparable injury is likely in the absence of [a stay]." Winter, 555 U.S. at 20 (emphasis added). The narrow inquiry here is whether defendants will be irreparably harmed by the court's enforcement of the preliminary injunction that enjoins them from using plaintiff's trademarks. In other

---

[9] If the court were to issue its order in German, the bottom line would be "Nein, nein, nein, nein, nein, nein, nein". The irony is staggering.

words, defendants must show that if the preliminary injunction is enforced, enjoining them from use of the GEORGE SINK marks, they will be irreparably injured. To make this showing, defendants rely on evidence of the publicity the controversy has generated. Specifically, defendants point to harms to Sink Jr.'s reputation. The public's interest in this controversy began when the lawsuit was filed, not when the preliminary injunction issued. In fact, most of the articles and internet commentary defendants present were written or posted prior to the court's issuance of the injunction. These claimed harms are the result of the controversy itself and have nothing to do with the issuance of the preliminary injunction. Therefore, these alleged injuries are irrelevant.

Further, a stay of the preliminary injunction would do nothing to remedy these harms or prevent further public interest in this matter. Defendants have not even argued that a stay of the preliminary injunction would alleviate any of the harms they have suffered as a result of this controversy. Defendants even admit as much in their motion to stay: "The damage to Sink Jr. et al.'s reputation [] cannot be undone . . ." ECF No. 45 at 19. Indeed, a stay of the preliminary injunction would do nothing to stop the public's interest in this matter. Nor would a stay address any of harms relied upon by defendants. Therefore, this evidence does not show that defendants would be irreparably harmed absent a stay of the preliminary injunction.

Moreover, in the August 9 Order, the court considered the injury that the preliminary injunction would cause defendants and determined that the injury would not be severe, as the court discussed above. Defendants have not presented any evidence that gives the court any reason to reconsider this holding. Therefore, defendants have not

made a showing that they would suffer irreparable injury absent a stay.  This factor weighs heavily against issuance of a stay.

### c.  Substantial Injury to Other Party

The court must next consider whether plaintiff would be substantially injured by a stay of the preliminary injunction.  In their motion, defendants all but ignore this question.  Instead, defendants reference the same irrelevant harms they rely upon for their own claim of irreparable injury.  The August 9 Order and preliminary injunction were premised on the fact that plaintiff would experience irreparable injury absent legal intervention.  If the court stayed its August 9 Order and preliminary injunction, defendants would be free to resume infringement of plaintiff's intellectual property.  The very same harms that the court sought to prevent through its preliminary injunction would result if the court now stayed that injunction.  The injury that would result from defendants' use of the plaintiff's marks is thoroughly outlined in the August 9 Order and does not merit further discussion here.  Therefore, the court finds that a stay would result in substantial harm to plaintiff, weighing heavily against granting a stay.

### d.  Public Interest

Finally, the court must consider whether the public interest would be served by granting a stay.  Defendants claim that the public interest weighs in their favor because defendants' use of the mark would not result in consumer confusion.  Again, defendants point to no new evidence that gives the court reason to abandon its earlier analysis.  In the August 9 Order this court outlined, in painstaking detail, each of the nine factors of the Rosetta Stone test[10] and determined that defendants' use of the mark clearly results in a

---

[10] Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 154 (4th Cir. 2012).

likelihood of consumer confusion. ECF No. 41 at 18–27. The court finds that the public interest would not be served by granting a stay because defendants' use of plaintiff's marks would likely result in consumer confusion.

In their motion to stay, defendants also argue that the preliminary injunction is contrary to the public interest because it restricts Sink Jr.'s ability to practice law in violation of South Carolina Rule of Professional Conduct 5.6.[11] This rule, however, is entirely irrelevant to this case. A cursory reading of Rule 5.6 reveals that it applies to "agreements" into which lawyers are restricted from entering. The rule applies to contracts between private parties that restrict a lawyer's ability to practice law. It does not apply to court orders, and it is certainly not violated by the court's preliminary injunction. At best, Rule 5.6 reflects a public policy against cumbersome non-compete agreements between lawyers. It has nothing to say about the public policy of an injunction that restricts a lawyer's ability to commit trademark infringement.

Moreover, as the court made clear in the August 8 Order and reiterates here, the preliminary injunction does not impede Sink Jr.'s ability to practice law. Sink Jr. may continue to practice law under his birth name throughout the life of the preliminary injunction. The preliminary injunction merely enjoins him from using plaintiff's trademark in a way that is likely to confuse consumers. Lawyers are not immune from

---

[11] The Rule states in full:
A lawyer shall not participate in offering or making:
(a) a partnership, shareholders, operating, employment, or other similar type of agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or
(b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy.
S.C. App. Ct. R. 407 RPC 5.6.

intellectual property law because it restrains the manner in which they may advertise and market their services. Sink Jr., like other businesspeople, may not reap the profits of goodwill cultivated by others. His status as an attorney does not change this core concept of trademark law. For all these reasons, defendants have not shown that a stay of the preliminary injunction is appropriate. Therefore, the court declines to stay its preliminary injunction.

### C. Motion to Stay Arbitration

Defendants' motion to stay also asks this court to stay arbitration proceedings during the pendency of their appeal. The parties do not dispute that the Agreement contains a valid arbitration clause. Instead, Defendants advance three arguments for the court to stay arbitration, none of which convince the court that a stay is appropriate.

First, defendants contend that a stay is appropriate under S.C. Code Ann. § 15-48-20(b) because defendants George Sink II Law Firm, LLC, George Sink Law Firm, LLC, and Southern Legal Association, LLC ("the LLC defendants") were not parties to the Agreement. Section 15-48-20(b) states:

> On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.

S.C. Code Ann. § 15-48-20(b) (emphasis added).

Defendants' reliance on this statute is misplaced. In order to issue a stay of arbitration under the statute, there must be a substantial and bona fide dispute as to whether there is an agreement to arbitrate. No party in this lawsuit has presented for the court's resolution the issue of whether such an agreement exists between the LLC

defendants and Sink P.A. To be sure, in their motion to stay, defendants argue that the LLC defendants did not agree to arbitrate. However, reading the statute in context, it clearly anticipates litigation between a party compelling arbitration and a party resisting it. Here, neither party has presented evidence that the LLC defendants have resisted arbitration. The court has not ruled that the LLC defendants are compelled to arbitrate because it has not been asked to do so. If Sink P.A. asks the court to compel the LLC defendant's presence at arbitration proceedings, then the court could properly consider that issue. Moreover, the court is unsure as a practical matter how Sink Jr.'s wholly owned and operated LLCs could resist arbitration proceedings while Sink Jr., the individual, attended them. In any event, there is no bona fide dispute before the court as to whether Sink P.A. and the LLC defendants agreed to arbitrate. The court will not stay arbitration pending resolution of the issue because the issue is not properly before the court.

Second, defendants argue a stay is appropriate because a reversal of the court's denial of its motion to dismiss by the Fourth Circuit Court of Appeals would bar arbitration through the doctrine of res judicata. Defendants are incorrect. A reversal at the Fourth Circuit would not invoke the doctrine of res judicata as to the merits of plaintiff's infringement claim. Plaintiff's Amended Complaint seeks only temporary injunctive relief from the court during the pendency of arbitration proceedings. This temporary relief exists only until final resolution of the claim by the Arbitrator. In other words, the preliminary injunction's life ends upon the final decision of the Arbitrator. Dismissal of plaintiff's complaint would merely determine the issue of temporary injunctive relief by invalidating the preliminary injunction. It would have no effect on

the merits of plaintiff's claim or the permanent injunction it seeks, which are within the sole preview of the arbitrator. Therefore, the possibility that the court's issuance of temporary injunctive relief will be overturned on appeal would not invoke the doctrine of res judicata and would not affect arbitration of the merits of this action. Therefore, the court rejects this argument for defendants' motion to stay.

Third, defendants contend in their reply to the plaintiff's response to their motion to stay that defendants have waived their right to arbitration. As a preliminary procedural matter, this argument is inappropriate. "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." Clawson v. FedEx Ground Package Sys., Inc., 451 F. Supp. 2d 731, 734 (D. Md. 2006).

Even overlooking its fatal procedural flaw, defendants' argument is without merit. An explanation of the unreasonableness of defendants' position necessitates another dive into this case's procedural history. The court found in its August 9 Order, as it again finds here, that the Agreement between Sink Jr. and Sink PA allows Sink PA to obtain temporary injunctive relief from this court without waiving its right to compel arbitration as to the merits of the controversy. And that is just what plaintiff's Amended Complaint does—it seeks temporary injunctive relief in the form of a preliminary injunction. Defendants sought to dismiss the Amended Complaint on two grounds. First, it asserted that plaintiff sought relief from the court beyond what was allowed under the Agreement. Second, defendants argued that the Agreement limited plaintiff to $500.00 of recovery. Plaintiff responded to each ground, arguing that temporary injunctive relief was proper. Defendants now contend that in responding to their motion to dismiss, plaintiff has

waived his right to arbitration. According to the logic of defendants, plaintiff may seek temporary injunctive relief under the Agreement but may not respond to a motion to dismiss a prayer for such injunctive relief. Such a position defies logic. Because the Agreement clearly authorizes Sink P.A. to seek temporary injunctive relief from this court, Sink P.A. may of course respond to motions to dismiss its complaint for temporary injunctive relief. Therefore, Sink P.A. has not waived its right to arbitrate. The court has no legitimate reason to stay the arbitration proceeding. Thus, the court denies defendants' motion to stay the August 9 Order and arbitration proceedings.

## IV.   CONCLUSION

For the foregoing reasons the court **GRANTS** the motion to modify, **DENIES** the motion to stay and **FINDS AS MOOT** the motion to expedite.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 26, 2019**
**Charleston, South Carolina**